PARAMOUNT PICTURES DISTRIBUTING COMPANY *et al., Respondents,* v. HAROLD H. HENNEFORD *et al., Appellants.*[1]

[1]Reported in 51 P. (2d) 385.

*The Attorney General* and *R. G. Sharpe, Assistant,* for appellants.

*Bausman, Oldham, Cohen & Jarvis* and *Simon Wampold, Jr.,* for respondents.

MAIN, J.—This action was brought to recover a tax which the plaintiffs had paid under chapter 191 of the Laws of 1933, p. 869, the occupation tax law, as amended by chapters 10 and 57, Laws of 1933, Ex. Ses., pp. 22 and 157 [Rem. 1934 Sup., § 8326-1 *et seq.*], and for an order restraining the defendants from collecting future taxes. To the complaint, a demurrer was interposed and overruled. The case was tried to the court without a jury, and resulted in findings of fact from which it was concluded that the plaintiffs were entitled to recover the taxes paid, and also the injunctive relief sought. From this judgment, the defendants appeal.

There is no dispute in the facts, and they may be stated as follows: The appellants are members of the tax commission of this state. The respondents are all foreign corporations and engaged in the business of manufacturing motion picture films and distributing them throughout the United States. The principal place of business of each of the respondents is outside of the state of Washington, but each of them had a branch office in the city of Seattle, called a film exchange, which is in charge of a local manager.

The local exchange solicits from proprietors of motion picture theaters, called exhibitors, applications for leases of motion picture films produced by respondent corporations outside of this state. In some instances, the applications are made for films already produced, and in some, the applications are for films to be produced. The printed applications, when signed by the exhibitors, are forwarded by the respective

local managers to the principal place of business of the appellants outside of this state and in the state of New York, for acceptance or rejection.

The applications, which are signed first by the exhibitors and forwarded, contain the stipulation that the instrument shall be deemed an application for a lease to exhibit the photoplay, and shall not become binding until accepted in writing by an officer or representative of the corporation to which it is sent, and until notice of the acceptance is sent to the exhibitor. When an application is rejected, the exhibitor who made the application is so notified. When the application is accepted by the home office, the film in due time is forwarded, in compliance with the order or contract, to the local exchange in Seattle, where it is delivered to the exhibitor in accordance with the order.

The films that are leased to exhibitors outside of Seattle are sent to them by the exchange with instructions to return them to the exchange, or forward them to another exhibitor, at the end of the term of the particular lease. The leases with the subsequent exhibitors are consummated in the same manner as with the original lessee. In every instance, the film is returned to the Seattle exchange by the last exhibitor. It is then sent outside the state, either to the corporation that sent it or to one that such corporation designates.

Whether the contract referred to in the statement here made is unenforceable because unilateral, we do not decide. The fact is that the exhibitor orders the film from the New York office. It is there accepted and, in accordance with the terms of the order, duly sent to the local branch in Seattle, where it is delivered to the exhibitors, and the rental or compensation therefor is paid to the local exchange.

The two questions which are controlling upon this appeal are (a) whether the local exchange is a link in interstate commerce; and (b) if it is, whether the tax collected, and for which recovery is sought, is a direct burden upon that commerce.

■ Chapter 57 of the Laws of 1933, Ex. Ses., p. 157, amends chapter 191 of the Laws of 1933, p. 869, by adding thereto a new section, to be known as § 2-a, p. 157, which provides that, from and after the first day of January, 1934, and until the thirty-first day of July, 1935,

"There is hereby levied and there shall be collected from every person engaging or continuing within this state . . . in any business not specifically taxable under section 2 of this act, an annual tax or excise for the privilege of engaging in such business; as to such persons the amount of the tax or excise shall be equal to the gross income of the business multiplied by the rate of five-tenths of one per cent; . . ." Rem. 1934 Sup., § 8326-2A.

It was under this act that the taxes in question were paid and for which recovery is sought.

The amount of the tax is computed in accordance with the statute and based on the gross income which passes through the local exchange. The tax provided for in the statute is an excise tax, and not a property tax. It is based upon a percentage of the gross income of a particular business. *State ex rel. Stiner v. Yelle,* 174 Wash. 402, 25 P. (2d) 91; *Supply Laundry Co. v. Jenner,* 178 Wash. 72, 34 P. (2d) 363.

It being an excise tax for the purpose of raising revenue, the act of the legislature imposing it was not passed in the exercise of the police power. Whether a law is enacted in the exercise of that power, depends upon whether the primary purpose is to raise revenue or to regulate industry. If the primary purpose is regulation, it is enacted under the police power, even

though it may be called a license or tax. *Fox Film Corp. v. Trumbull,* 7 F. (2d) 715; 2 Cooley on Taxation (3d ed.), p. 1127.

As already indicated, chapter 191 of the Laws of 1933 and the amendatory acts thereto were plainly enacted for the primary purpose of collecting revenue, and not for the purpose of regulating industry. Cases cited which hold that the state legislature, in the exercise of the police power, may regulate to some extent a business which is interstate in character, have no application to this case.

 Inquiry will now be directed as to whether the business done by the local exchange, in the manner above indicated, is a part of interstate commerce. This presents a Federal question, and is controlled by the case of *Binderup v. Pathe Exchange,* 263 U. S. 291, 44 S. Ct. 96. In that case, New York manufacturers and distributors of motion picture films, in the regular course of their business, shipped the films from the state of New York to the state of Nebraska and delivered them to a Nebraska resident, through a local agent of the manufacturers in that state, and it was there held that the business of the manufacturers and producers of the films and their transactions with the exhibitors were interstate commerce, notwithstanding that, in accordance with the contracts, the films were delivered through a local exchange in Nebraska, through which they were first consigned and transported. It was there said:

"The film contracts were between residents of different States and contemplated the leasing by one to the other of a commodity manufactured in one State and transported and to be transported to and used in another. The business of the distributors of which the arrangement with the exhibitor here was an instance, was clearly interstate. It consisted of manufacturing the commodity in one State, finding cus-

tomers for it in other States, making contracts of lease with them, and transporting the commodity leased from the State of manufacture into the States of the lessees. If the commodity were consigned directly to the lessees, the interstate character of the commerce throughout would not be disputed. Does the circumstance that in the course of the process the commodity is consigned to a local agency of the distributors, to be by that agency held until delivery to the lessee in the same State, put an end to the interstate character of the transaction and transform it into one purely intrastate? We think not. The intermediate delivery to the agency did not end and was not intended to end the movement of the commodity. It was merely halted as a convenient step in the process of getting it to its final destination. The general rule is that where transportation has acquired an interstate character 'it continues at least until the load reaches the point where the parties originally intended that the movement should finally end.' *Illinois Central R. R. Co. v. Louisiana R. R. Comm.*, 236 U. S. 157, 163. And see, *Western Union Tel. Co. v. Foster*, 247 U. S. 105, 113; *Western Oil Refining Co v. Lipscomb*, 244 U. S. 346, 349.

"In *Swift & Co. v. United States*, 196 U. S. 375, 398, it was held that where cattle were sent for sale from a place in one State, with the expectation that the transit would end after purchase in another State, the only interruption being that necessary to find a purchaser at the stockyards, and this was a typical, constantly recurring course, the whole transaction was one in interstate commerce and the purchase a part and incident of it. It further appeared in that case that Swift & Company were also engaged in shipping fresh meats to their respective agents at the principal markets in other cities for sale by such agents in those markets to dealers and consumers; and these sales were held to be part of the interstate transaction upon the ground 'that the same things which are sent to agents are sold by them, and . . . some at least of the sales are of the original packages. Moreover, the sales are by persons in one State to persons in another.' In the same case in the court

below, 122 Fed. 529, 533, upon this branch of the case, it is said:

" 'I think the same is true of meat sent to agents, and sold from their stores. The transaction in such case, in reality, is between the purchaser and the agents' principal. The agents represent the principal at the place where the exchange takes place; but the transaction, as a commercial entity, includes the principal, and includes him as dealing from his place of business.'

"The most recent expression of this Court is in *Stafford v. Wallace,* 258 U. S. 495, 516, where, after describing the process by which livestock are transported to the stockyards and thence to the purchasers, it is said:

" 'Such transactions can not be separated from the movement to which they contribute and necessarily take on its character. The commission men are essential in making the sales without which the flow of the current would be obstructed, and this, whether they are made to packers or dealers. The dealers are essential to the sales to the stock farmers and feeders. The sales are not in this aspect merely local transactions. They create a local change of title, it is true, but they do not stop the flow; they merely change the private interests in the subject of the current, not interfering with, but, on the contrary, being indispensable to its continuity.'

"The transactions here are essentially the same as those involved in the foregoing cases, substituting the word 'film' for the word 'livestock', or 'cattle', or 'meat'. Whatever difference exists is of degree and not in character."

It is true that the court there refers to the contract; but whether the films were shipped in pursuance to a valid contract or in pursuance to an order, where the transactions are the same and the procedure is the same, is not of material consequence. On the question of whether the local exchange is a part of interstate commerce, the case just cited and quoted from is di-

rectly in point and is controlling. Citing that case as authority, in *United States v. First National Pictures,* 34 F. (2d) 815, it was said:

"The delivery of films through the exchanges in performance of the exhibition contracts, and the redelivery thereof to the exchanges, is interstate commerce of a very substantial character."

Attention has been called to a statement in the *Binderup* case, *supra,* to the effect that:

"It does not follow that because a thing is subject to state taxation it is also immune from federal regulation under the Commerce Clause."

But that statement in no sense detracts from the holding of the court. When the cases cited under the statement are read, it is plain that what the court had in mind when making that statement was that a business transaction or system of doing business might be entirely within one state, and therefore subject to state taxation, and yet be a part of a more extensive system of doing business of the character of interstate commerce, and subject for that reason to Federal regulation.

The case of *Glass v. Hoblitzelle,* 83 S. W. (2d) (Tex. Civ. App.) 796, supports the view here expressed, to the effect that the business of the local exchange is interstate in character.

We now come to the question of whether the tax provided for in the statute, and which is based upon a percentage of the gross income, in this case of the local exchange, which, as we have found, is transacting business which is interstate, places a direct burden upon interstate commerce. Here, again, the question is Federal in character and is controlled by the case of *Crew Levick Co. v. Pennsylvania,* 245 U. S. 292, 38 S. Ct. 126, where it was held that a tax on the business

of selling goods in foreign commerce, measured by a percentage of the entire business transacted, is a regulation of foreign commerce and void. After reviewing the authorities, it was there said:

"The tax now under consideration, so far as it is challenged, fully responds to these tests. It bears no semblance of a property tax, or a franchise tax in the proper sense; nor is it an occupation tax except as it is imposed upon the very carrying on of the business of exporting merchandise. It operates to lay a direct burden upon every transaction in commerce by withholding, for the use of the State, a part of every dollar received in such transactions. That it applies to internal as well as to foreign commerce cannot save it; for, as was said in *Case of the State Freight Tax*, 15 Wall. 232, 277, 'The State may tax its internal commerce, but if an act to tax interstate or foreign commerce is unconstitutional, it is not cured by including in its provisions subjects within the domain of the State.' That portion of the tax which is measured by the receipts from foreign commerce necessarily varies in proportion to the volume of that commerce, and hence is a direct burden upon it.''

In the case now before us, the tax is measured by receipts from interstate commerce and places a direct burden thereon, and for this reason it cannot be sustained.

In *State v. Paramount Publix Corp.*, 178 La. 818, 152 So. 534, the facts are in all essential particulars the same as they are in this case, and it was held that the state was precluded from levying a license tax for the leasing and distributing of the films because such a tax was sought to be levied on a business which was interstate commerce in character, and the tax was a direct burden thereon.

In opening their argument in the brief, the appellants raise a number of what might be termed technical questions, which we do not deem it necessary to

discuss. In the view that we have taken of the case, they are not material.

The judgment will be affirmed.

MILLARD, C. J., MITCHELL, HOLCOMB, STEINERT, and GERAGHTY, JJ., concur.

TOLMAN, J. (dissenting)—Notwithstanding the eminent authority upon which the majority rests its decision, I am convinced that it has misconceived the situation, has failed to see what operation is sought to be taxed, and has misapplied the doctrine of *Binderup v. Pathe Exchange,* 263 U. S. 291, 44 S. Ct. 96.

For present purposes, we should disregard the fact that the films are produced outside of this state and are brought here through an interstate operation. All of that is wholly beside the present question.

When and after the films arrive in this state, they are exhibited in local theaters for the joint benefit of the local exhibitors and the film owner. The proceeds of those wholly local exhibitions, which are paid to and received by the film owner, are the sole basis for the tax. As I see it, such proceeds are wholly derived from the local exhibitions.

The process of exhibiting the films in all of the local theaters consumes wholly the commercial value of such films within this state. In other words, the films come to this state new, with their value intact, and are exhibited from place to place within the state until their value within the state is wholly consumed and no commercial value within the state remains in them. They are thus, for all practical purposes, as wholly consumed within the state as would be a sack of flour shipped into the state, made into bread, and the bread then eaten. Nothing would remain of the flour, and nothing remains of the commercial value of the films in this state, save as it has been converted into money

by the operation, and that money so earned within the state is wholly a local product and is the sole basis of the tax.

No such question involving earnings through local exhibitions was involved in the *Binderup* case, *supra,* and not even remotely did the court undertake to decide such an issue. On the contrary, the court clearly pointed out that no such question was involved, saying:

"The cases cited by defendants in error, upholding state taxation as not constituting an interference with interstate commerce, are of little value to the inquiry here. It does not follow that because a thing is subject to state taxation it is also immune from federal regulation under the Commerce Clause. *Stafford v. Wallace,* 258 U. S. 495, 525-527; *Addyston Pipe & Steel Co. v. United States,* 175 U. S. 211, 245."

The case of *State v. Paramount Publix Corp.,* 178 La. 818, 152 So. 534, is the only case which supports the majority, and in that case the Louisiana court fell into the same error and, therefore, should not be followed.

In a case such as this, involving the purely local exhibition of films, the right of the sovereign state to tax is so clear that no authority need be cited.

The judgment appealed from should be reversed.

BEALS and BLAKE, JJ., concur with TOLMAN, J.