GROSS INCOME TAX DIVISION, STATE OF INDIANA *v.* WARNER BROS. PICTURES DISTRIBUTING CORPORATION.

[No. 29,045. Filed March 17, 1954. Rehearing denied May 26, 1954.]

*Edwin K. Steers,* Attorney General, *John J. McShane, Lloyd C. Hutchinson, Earl E. Schmadel,* and *George B. Hall,* Deputy Attorneys General, for appellant.

*Joseph J. Daniels* and *Paul N. Rowe,* both of Indianapolis (*Baker & Daniels,* of Indianapolis, and *Friedman & Bareford,* of New York, of counsel), for appellee.

FLANAGAN, J.—The question presented is whether appellee is engaged in interstate commerce. If so engaged, and the tax sought to be imposed is a direct burden upon that commerce, its receipts are not subject to the Indiana Gross Income Tax.

Appellee is a New York corporation licensed to do business in the State of Indiana. It maintains branch offices, called film exchanges, in the principal cities throughout the country, for the purpose of distributing its motion picture films to exhibitors who sign license agreements with the corporation. One such office is located in Indianapolis and serves those licensees of the appellee in the central and southern counties of Indiana.

Another such office is located in Chicago and serves licensees in Illinois, part of Iowa, and the northern counties of Indiana. The right of the State to impose a tax on the gross receipts of the Indianapolis office is not here in issue. It is a tax on the gross receipts from Indiana licensees of the Chicago office with which we are concerned.

The business of the Chicago office is carried on by traveling salesmen who call upon the Indiana exhibitors and receive from them applications for licenses to show certain films. These salesmen submit the applications to their Chicago office, which, in turn, forwards them to the New York office of appellee for acceptance or rejection. Notification of acceptance or rejection is sent to the Chicago office and from there relayed to the exhibitor. In cases of acceptance the film contracted for is shipped to the Chicago office and then to the exhibitor. The exhibitor, after showing the film, in most cases, sends it back to the Chicago office. In all cases the exhibitor assumes the cost of the transportation as well as the risk of damage to the film in transit. All payments under the license agreements are received by the appellee at its Chicago office.

As we understand it, the State relies for reversal on the contention that appellee's film has reached its final destination at the exhibitor's place of business; that appellee is there engaged in a local Indiana business; that at this place the film of the appellee loses its interstate character and acquires a purely local one. With this contention we cannot agree.

In the case of *Paramount Pictures Dist. Co.* v. *Henneford* (1935), 184 Wash. 376, 51 P. 2d 385, it was held, under circumstances more favorable to appellant than in the instant case, that similar transactions in the rental of films do constitute interstate commerce. See,

also, *State* v. *Paramount Publix Corporation* (1934), 178 La. 818, 152 So. 534.

In the case of *Gross Income Tax Division* v. *Surface Combustion Corp.* (1953), 232 Ind. 100, 111 N. E. 2d 50, 66, this court said:

"The United States Supreme Court has consistently held that a tax on gross income from transactions in interstate commerce is an unconstitutional burden upon, or interference with, commerce among the states."

We cannot see that appellee in the instant case, by reserving to itself the right of visitation on the exhibitor for purposes of determining its rightful license fee, has thus become engaged in the local exhibition of the film which it has licensed to the exhibitor. Nor can we see that the license agreement, providing for a percentage of the exhibitor's admission price as the license fee, changes the character of the transaction.

Judgment affirmed.

Draper, C. J., and Emmert and Gilkison, JJ., concur.

Bobbitt, J., dissents with opinion.

DISSENTING OPINION

BOBBITT, J.—I cannot agree with the majority opinion for the following reasons:

*First:* Appellee is duly qualified to do business in Indiana and maintains a place of business designated as a film exchange in the city of Indianapolis. During the years here in question appellee, a New York corporation with its executive offices and principal place of business in the city of New York, was engaged in the business of licensing exhibitions of motion picture films under written agreements with motion picture exhibitors in Indiana. Branch offices designated as film exchanges are

maintained in various trade areas for the purpose of serving the exhibitors in that territory. Appellee maintains such a branch office—film exchange—in the city of Indianapolis from which it serves theatre exhibitors in all of Indiana except certain counties in the extreme northern part of the state. Appellee also maintains a film exchange in the city of Chicago which serves that trade area, the northern half of Illinois, certain parts of Iowa, Wisconsin, Michigan and certain counties in northern Indiana which are not served by the Indianapolis branch office—exchange.

No question is here presented as to tax assessed and paid upon the receipts from the business conducted through and from the Indianapolis exchange.

From the facts as presented by the record it conclusively appears that appellee has subjected itself to local jurisdiction and is engaged in a local business or activity consisting of leasing and distributing motion picture films for exhibition in Indiana; controlling and regulating the time and manner of their exhibition; and the rendering of service in connection therewith. Appellee's activities in that part of Indiana which is served by the Chicago exchange are essentially and in fact no different from those conducted from its Indianapolis exchange and are, therefore, in fact, an integral part of appellee's Indiana business.

I do not concur in appellant's contention that the provision of the lease which retained to appellee the right to fix the provision for auditing exhibitor's books has the legal effect of making appellee a participant in the local enterprise of exhibiting films in theatres in Indiana. Nor do I believe the provision for film rental based upon a percentage of the gross receipts has such an effect. This provision in the lease is only the measuring stick for determining the rental fee to be charged.

However, we are here concerned with the source of appellee's income derived from its lease contracts with Indiana exhibitors, and the fact that appellee may not be engaged in a joint enterprise with its exhibitors in a local exhibition of motion picture film in Indiana does not, under the circumstances in this case, determine the source of its income.

It seems clear to me that appellee's income here in question is derived from the leasing or rental and distribution of moving picture films to local exhibitors for exhibition in their theatres and from services and functions rendered and connected therewith, and not from the actual exhibition of the films.

The cases of *Tad Screen Advertising* v. *Oklahoma Tax Com'n* (CCA 10th, 1942), 126 F. 2d 544, and *Ligon* v. *Alexander Film Co.* (1932), Tex. Com. App., 55 S. W. 2d 1030 (certiorari denied 289 U. S. 760, 53 S. Ct. 793, 77 L. ed. 1503), are clearly distinguishable from the case at bar and lend no support to appellant's position. In those cases no leasing of films to the local exhibitors was involved but the advertising films shown were, under the distributor's contract, exhibited by it, the local exhibitor being paid a fee for the use of his theatre in showing the film. That is not the situation in this case.

*Second:* The majority opinion is grounded upon *Paramount Pictures Distributing Co.* v. *Henneford* (1935), 184 Wash. 376, 51 P. 2d 385, which case was decided upon the authority of *Binderup* v. *Pathe Exchange* (1923), 263 U. S. 291, 44 S. Ct. 96, 68 L. ed. 308. The latter case involved a violation of the Sherman Act, 15 U. S. C. A. §1, et seq. In that case the film contracts were between residents of different states, and the activities were between residents of different states. The activities consisted of manufacturing the films in one state, finding customers for them in others,

making contracts of lease with them and transporting the film leased from the state of manufacture into the state of the lessees. In some instances the films were consigned to a local agency of the distributor to be by that agency held until delivery to the lessee in the same state. At page 317, 68 L. ed., it is said:

> "The contracts with these distributors contemplated and provided for transactions in interstate commerce. The business which was done under them—leasing, transportation, and delivery of films—was interstate commerce."

That the shipment of motion picture films by a producer or manufacturer from one state to exhibitors in another state to be exhibited by the latter is a transaction in interstate commerce is well settled. *Tad Screen Advertising* v. *Oklahoma Tax Com'n* (CCA 10th, 1942), 126 F. 2d 544, 548, *supra; Fox Film Corporation* v. *Trumbull* (1925), D. C. 7 F. 2d 715, 721; *Fox Film Corporation* v. *Federal Trade Commission* (1924), 2d Cir., 296 Fed. 353; *Binderup* v. *Pathe Exchange* (1923), 263 U. S. 291, 44 S. Ct. 96, 68 L. ed. 308, *supra.*

No question concerning the power to tax the receipts derived from the contracts involved was present in the Binderup case. It concerned only the question whether the transactions there present were in interstate commerce so as to bring them within the provisions of the Sherman Act. While this case is authority upon the question of the interstate nature of the shipment of motion picture films across state lines, it lends no support to the determination of the validity of the tax here in question—it does not establish the source of appellee's income under the facts in the case at bar. It does not follow that because a transaction is one in interstate commerce, and thereby comes within the terms of the Anti-trust Act, that it is, therefore, immune from state taxation.

The tax involved in the Henneford case was an excise tax for the privilege of engaging in business in the state of Washington. The tax with which we are here concerned is one upon gross receipts from commerce.[1] If appellee's income is wholly from transactions in interstate commerce, then the Henneford case might be persuasive in the case at bar, but if appellee's income is from intrastate business, or activities within Indiana, the Henneford case does not apply.

Appellee relies upon the ruling of this court in connection with Class A sales in *Dept. of Treasury* v. *International Harvester Co.* (1943), 221 Ind. 416, 47 N. E. 2d 150, in support of its position that the film rental receipts from Indiana exhibitors received by its Chicago film exchange are derived from sources outside the state of Indiana—transactions in interstate commerce.

In the Harvester case the sale was completed outside the state of Indiana and the income sought to be taxed was from this sale. All that remained to be done in that situation was the shipment of the article to the purchaser in Indiana where the article was consumed by use. While in the case at bar only the *right to use* was sold outside Indiana. In the case of percentage films appellee received no income from the sale of such right until it was exercised by the exhibition of the film in Indiana by the lessee—exhibitor, under the conditions and regulations imposed by lessor-appellee. Since, with rare exceptions, there is no income to appellee except as liquidated damages unless the film is delivered and used, it cannot be said that appellee's income is from the mere sale of the right to

---

1.  See. J. D. Adams Mfg. Co. v. Storen (1938), 304 U. S. 307, 58 S. Ct. 913, 82 L. ed. 1365, 117 A. L. R. 429; Section 64-2601, Burns' 1951 Repl., Acts 1933, ch. 50, §1, p. 388 and amendments thereto.

use the film. It must be conceded that the delivery of the film as well as the performance of certain other things, within the control and dependent upon appellee, must transpire in Indiana before there is income to appellee.

The income sought to be taxed in the Harvester case did not depend upon the use of the article in Indiana or any other activity within the state. This, it seems to me, clearly distinguishes the Harvester case from the one at bar.

 *Third:* The error of the majority opinion lies in the application of the rule as quoted from *Gross Income Tax Division* v. *Surface Combustion Corp.* (1953), 232 Ind. 100, 111 N. E. 2d 50, 66.

While it is well settled that the shipping of motion picture film from one state to exhibitors in another state for exhibition by the latter is interstate commerce, it is likewise well settled that when an article that has been shipped in interstate commerce has arrived at its destination and is there held for use and disposal, it passes under the protection of state law and becomes subject to the taxing and police power of the state. *Gross Income Tax Div.* v. *J. L. Cox and Son* (1949), 227 Ind. 468, 86 N. E. 2d 693, 10 A. L. R. 2d 642; *Tad Screen Advertising* v. *Oklahoma Tax Com'n* (CCA 10th, 1942), 126 F. 2d 544, 548, *supra,* and cases there cited.

The shipment of film by appellee from its Chicago exchange to exhibitors in Indiana is an interstate transaction, but there are here present other factors which the majority opinion fails to consider. These, in my opinion, determine the outcome of this appeal.

Appellee serves its lessees in by far the greater number of counties in Indiana from its Indianapolis exchange. Its activities there are similar to those carried on by other exchanges throughout the entire

territory which appellee serves. The activities at the Indianapolis branch consist of the furnishing of motion picture films for exhibition in local theatres in Indiana, the furnishing of advertising in connection therewith, at the cost of exhibitor, the regulation of the time and manner of each exhibition and the rendering of such services in connection with the distribution of its films as are necessary and essential thereto. In my opinion this is a local activity carried on within the state of Indiana by appellee through the use of personal property which has arrived at the destination where it is to be used, and the income derived from such activities is within the taxing power of the state of Indiana. The taxing of the gross receipts derived from such activities in Indiana, which are directed from its Chicago exchange, is not a burden on the interstate transaction which is incidentally involved in and connected therewith. *Holland Furnace Co.* v. *Department of Treasury* (1943), 7 Cir., 133 F. 2d 212, certiorari denied, 320 U. S. 746, 64 S. Ct. 49, 88 L. ed. 443. A tax on such receipts does not discriminate against appellee in favor of other distributors, local or foreign.

The leasing and distributing of films and the rendering of services incidental thereto from appellee's Indianapolis exchange, in my opinion, constitutes doing business or engaging in activities within Indiana, as appellee has properly qualified so to do. The business or activity carried on in the counties which are served by the Chicago exchange is of an identical nature to that which is carried on in the counties that are served by the Indianapolis exchange.

It therefore seems to me that if the receipts from the Indianapolis branch are taxable and the tax is not a burden upon, or an undue interference with, the interstate shipment of films from without Indiana to the Indianapolis exchange, the receipts from similar

activities conducted in Indiana from the Chicago exchange would likewise be taxable, and such tax would not be a burden upon the interstate incident of transferring the film from Chicago to the exhibitors in northern Indiana.

The imposition of the tax on the receipts from that part of Indiana served by the Chicago exchange is no more of a burden upon the interstate shipment of films across state lines than is the imposition of the tax on those receipts in the Indianapolis exchange which are derived from the remaining counties in Indiana.

*Fourth:* Section 2 of the Gross Income Tax Act (Acts 1937, ch. 117, §2, p. 604, being §64-2602, Burns' 1951 Replacement) provides:

> "There is hereby imposed a tax upon the receipt of gross income, measured by the amount or volume of gross income, and in the amount to be determined by the application of rates on such gross income as hereinafter provided. Such tax shall be levied upon the receipt of the entire gross income of all persons resident and/or domiciled in the state of Indiana, except as herein otherwise provided; and upon the receipt of gross income derived from activities or businesses or any other source within the state of Indiana, of all persons who are not residents of the state of Indiana, and shall be in addition to all other taxes now or hereafter imposed with respect to particular privileges, occupations, and/or activities."

This brings us then to the question—Is appellee's income which is here sought to be taxed derived from transactions in interstate commerce or from "activities or businesses or any other source within the State of Indiana?"

The fact that appellee and the exhibitor may not be jointly engaged in a local business enterprise does not change the source of appellee's income. Under the lease contract appellee has no income except as liqui-

dated damages,[2] unless the films are distributed to the local exhibitors and shown—used—in the local theatre by the exhibitor in the manner and at the time prescribed by appellee.

Source is that from which anything comes forth. Webster's New International Dictionary, 2d ed. We are here concerned with the source of gross income as defined in the act.[3]

The deliveries of film from the Chicago branch are as much a part of its Indiana business as are those made from its Indianapolis distributing station. Appellee cannot escape a part of the burden which it assumes for the privilege of doing business in Indiana by servicing, because of convenience and better transportation facilities, a part of its Indiana territory from a film exchange located in the city of Chicago, Illinois. We may properly assume that these transactions are not unrelated to appellee's other business in Indiana, and it cannot be considered an unequal burden for this state to require that part of appellee's business to bear its share of the price of enjoying the full benefits accruing from its Indiana business. See: *Nelson v. Sears, Roebuck & Co.* (1941), 312 U. S. 359, 61 S. Ct. 586, 85 L. ed. 888, 892, 132 A. L. R. 475.

Robert A. McGuire, auditor of exchanges for appellee, testified, by deposition, as to the reasons for servicing the northern Indiana counties from the Chicago exchange, as follows:

"Q. Will you tell us what are the facts with respect to the allotment of the tier of northern Indiana counties to the Chicago Film Ex-

---

2. Clause 3 of the contract provides for liquidated damages to the exhibitor in case appellee fails to furnish a film, and appellee in the event exhibitor fails, for reasons within his control, to show a film.

3. Section 64-2601, Burns' 1951 Repl., Acts 1933, ch. 50, §1, p. 388, and amendments thereto.

change for service by that exchange? What are the reasons that that is done and how does that affect the operation of your business handled out of that Chicago Film Exchange?

"A. The greater part, if not all, of the northern tier of counties in Indiana, is closer to the City of Chicago than to Indianapolis and the transportation facilities are better. In addition to that, a considerable portion of that part of Indiana, the accounts, the theatres in that portion are subject to clearance of the City of Chicago, and they could not readily be booked with pictures from Indianapolis.

"Q. Would there be any loss of time and inefficiency and additional expense resulting if those theatres or exhibitors in the northern tier of Indiana Counties were served by the Indianapolis Film Exchange?

"A. There would be, because by serving those accounts from the City of Chicago, we can expedite the delivery and return of the film because of the greater transportation facilities. That is a big item of print expense in our cost of operation."

In *Warner Bros. Pictures, Inc.* v. *District of Columbia* (1948), 83 U. S. App. D. C. 158, 168 F. 2d 157, the District of Columbia Circuit Court, in determining whether income was from a source within the District of Columbia, where the activities which gave rise to the income were similar to those carried on by appellee in the case at bar from its Chicago exchange, at page 159, said:

"Under the conception of the contract as establishing a joint adventure, the two adventurers used the positive prints in the District of Columbia by hiring them to theatres therein. If the contract was a lease of the prints from Warner to Distributor for subletting to theatres, then Warner used the prints in the District of Columbia by leasing them to Distributor therein. Whether joint adventure or lease, the sums received by Warner

came from District sources because the location of personal property which is the subject of hire betrays the source of the owner's income derived from the hire.

"But we need not decide whether under the contract there was a joint adventure, a simple lease or some other relation; the simple fact, which cannot be avoided by any technicalities of construction, is that Warner's photoplays were hired to District exhibitors and Warner received a percentage of the money paid by them. Legal niceties cannot destroy the actuality that such money was income from sources within the District."

*Fox Film Corporation* v. *Trumbull* (1925), D. C. 7 F. 2d 715, *supra*, involved a tax levied by the state of Connecticut upon motion picture films which were shipped into Connecticut from Boston, Massachusetts under lease contracts similar to those with which we are concerned in the case at bar.

In the Trumbull case, the District Court held that the business in which appellants were engaged was clearly interstate commerce, but that under the facts, which are indistinguishable from those in the case at bar, the films came to rest within the state of Connecticut and were subject to the law of that state. At page 725, of 7 F. 2d, it is said:

"There must be some time when the films are subject to the law of the state, and necessarily when they are in the hands of the exchanges ready to be rented to exhibitors or have passed to the latter, they are in consumption, and mingled as much as from their nature they can be with other property of the state."

*Ford Motor Co.* v. *Department of Treasury* (1944), 7th Cir., 141 F. 2d 24, involved the assessment of gross income derived from the sale of cars, trucks and parts which were shipped directly from appellant's factory in Michigan, or from assembly plants in Illinois,

Ohio, and Kentucky to dealers in Indiana, where such products were paid for by the Indiana dealers in cash upon the delivery thereof to the employees of the truck-away or convoy companies which delivered the products, which payments were by such employees taken and delivered in due course to the respective branches of appellant from which the products had been shipped.

While this case involved a tax on the sale of automobiles, trucks or parts which were shipped from points outside Indiana to dealers within the state, and while the judgment was vacated on appeal to the United States Supreme Court on another question,[4] the reasoning in that case applies with equal force to the facts in the case at bar.

The Circuit Court there held that the gross income involved in the Ford Motor case was derived from sales in which all transactions, except the placing of orders and the shipment of goods, took place in Indiana. The only apparent distinction between that situation and that of a shipment by appellee of films from Chicago to exhibitors in northern Indiana, is that in the case at bar the rental fee is forwarded by the exhibitor directly to the Chicago exchange, while in the Ford Motor case the payment for the products delivered was delivered to the proper branch (point of distribution) by the agent of the carrier which delivered the products. In one case the payment was sent by mail, and in the other by messenger.

Also, in the Ford Motor case, as here, the sales involved were only a part of appellant's Indiana business.

In holding that the sale there involved took place in Indiana and the fact that it arrived in this state

4. Ford Motor Co. v. Department of Treasury (1945), 323 U. S. 459, 65 S. Ct. 347, 89 L. ed. 389.

in interstate commerce was not material, the court, at page 26, 141 F. 2d, said:

"Since the gross income here involved was derived from sales in which all transactions except the placing of some orders and the shipment of the goods took place in Indiana, the sales occurred in Indiana and such transactions were so isolated in and identified with Indiana that the possibility of multiple taxation of such sales was eliminated. That being so, the fact that the merchandise arrived in Indiana in interstate commerce is immaterial. *Department of Treasury* v. *Allied Mills*, 220 Ind. 340, 42 N. E. 2d 34; *J. D. Adams Manufacturing Co.* v. *Storen, supra; Department of Treasury of Indiana* v. *Wood Preserving Corp.*, 313 U. S. 62, 61 S. Ct. 885, 85 L. Ed. 1188; *McGoldrick* v. *Berwind-White Coal Mining Co.*, 309 U. S. 33, 57, 60 S. Ct. 388, 84 L. Ed. 565, 128 A. L. R. 876.

"It is not controlling that the gross income taxed is derived from the sale of goods that arrive in the State in interstate commerce. If the tax does not burden interstate commerce, it is not invalid, and it does not burden interstate commerce when the gross receipts are derived from sales that took place within the taxing state. That is this case."

While the case of *United Artists Corporation* v. *Board of Censors* (1949), 189 Tenn. 397, 225 S. W. 2d 550, involved the validity of certain acts creating a board of censorship in the city of Memphis and county of Shelby, Tennessee, I believe that the holding of the Tennessee Supreme Court in that case on the question of whether appellant was doing business in the state of Tennessee is persuasive in the case at bar. At page 555, 225 S. W. 2d, it is said:

"In the light of the foregoing undisputed facts there appears no escape from the conclusion that the United Artists has a financial interest in the outcome of every performance. Viewing the facts as set forth in the petition we find that the film *'comes to rest'* in this State when it is exhibited at a local theatre for the enrichment of appellants.

It does not *come to rest* for any other purpose and constitutes 'doing business' in Tennessee."

And further, at page 555:

"We think the weight of authority sustains the proposition that where property has reached its final destination, and held for local business purposes, the consignor and the consignee sharing in the profits of the business, it loses its interstate character and must be adjudged to be intrastate business. The taxation of such a business is not a burden upon interstate commerce. General Oil Co. v. Crain, 209 U. S. 211, 28 S. Ct. 475, 52 L. Ed. 754; Browning v. City of Waycross, 233 U. S. 16, 34 S. Ct. 578, 58 L. Ed. 828; Fox Film Corporation v. Trumbull, D. C., 7 F. 2nd 715, 722."

The law looks at the substance and not to the form. *Browning* v. *City of Waycross* (1914), 233 U. S. 16, 34 S. Ct. 578, 58 L. ed. 828; *Commissioner of Internal Revenue* v. *Court Holding Co.* (1945), 324 U. S. 331, 65 S. Ct. 707, 89 L. ed. 981; *Ingram-Richardson Mfg. Co.* v. *Gross Income Tax Div.* (1954), 233 Ind. 109, 117 N. E. 2d 272.

When the transactions, the receipts from which are here sought to be taxed, are stripped of formalities and the substance of plaintiff's-appellee's activities carried on from its Chicago exchange is considered in connection with and as a part of the total business and activities in which it is engaged in Indiana, it must be concluded that appellee's income from lease contracts with exhibitors in those counties served by the Chicago branch, because of convenience, is an integral part of the whole of its Indiana business.

When appellee conducts business and carries on activities within the state of Indiana under a license from the state, it is entitled to and enjoys all of the benefits which accrue to and flow from such right. It cannot escape the burdens which are imposed by reason of

the privileges granted, by the subterfuge of conducting a part of such business from a branch office across the state line, because it is more convenient and economical so to do, by asserting that those activities which are carried on from such branch are transactions in interstate commerce and, as such, are not subject to the same burdens as is the remainder of its business and activities which are similarly conducted from a branch located within the state. Neither can it escape that burden by having the proceeds of its intrastate activities paid to it in another state. *Department of Treasury* v. *Wood Preserving Corp.* (1941), 313 U. S. 62, 61 S. Ct. 885, 85 L. ed. 1188; *Gross Income Tax Division* v. *J. L. Cox and Son* (1949), 227 Ind. 468, 86 N. E. 2d 693, 10 A. L. R. 2d 642, *supra*.

It is my opinion that the income which appellee derived from its lease contracts with motion picture exhibitors in those counties in Indiana which are served by the Chicago exchange is derived from activities and sources within the state of Indiana and is subject to the Indiana Gross Income Tax under the provisions of §2 of the Act.

*Fifth:* Appellee asserts that to impose the tax in question upon the amount it receives for rental based upon a percentage of the gross receipts of the theatre would be double taxation because by Department regulation the exhibitor must pay on the entire receipts without deduction for film rental.

Appellee misapprehends the nature of the tax here imposed. It is a tax upon gross receipts—gross income. If appellee is not engaged in a joint venture with exhibitor in the operation of a local theatre, then the entire proceeds from the operation of the theatre are gross income to the exhibitor or operator and taxable against him as such. The rental fees for the use of the film, whether a flat rate or a percentage of the receipts,

is gross income to appellee, and if derived from activities or business or from any other source within the state of Indiana is taxable as such. Under the provisions of the act this could not be construed as double taxation. While it might appear to be inequitable, that is not a matter for our determination, but is a question of policy for the legislature.

The decision of the court is contrary to law and the judgment should be reversed.

NOTE.—Reported in 118 N. E. 2d 117.