**INDIANA DEPARTMENT OF STATE REVENUE, Appellant (Defendant),**

v.

**J. C. PENNEY COMPANY, INC., Appellee (Plaintiff).**

**No. 2–378A109.**

Court of Appeals of Indiana,
Second District.

Dec. 2, 1980.

Rehearing Denied Jan. 14, 1981.

Theodore L. Sendak, Atty. Gen., Charles D. Rodgers, Deputy Atty. Gen., Indianapolis, for appellant.

Lester M. Ponder, Michael R. Fruehwald, Barnes, Hickam, Pantzer & Boyd, Indianapolis, Robert S. Gorin, Michael Pearl, New York City, for appellee.

SULLIVAN, Judge.

J. C. Penney, Inc., (Penney) is a Delaware corporation with its principal place of business in New York. The Indiana State Department of Revenue (Department) assessed gross income taxes against Penney for receipts from direct mail catalog sales and service charges on credit sales. Penney sought a refund for taxes for the taxable period from January 31, 1968 through January 31, 1972. The trial court allowed the refund and the Department appeals.

The Department asserts as error the following conclusions of law:

1. The income at issue was not derived from activities inside Indiana and therefore was not subject to tax under I.C. 6-2-1-2 (Burns Code Ed. 1978);

2. The imposition of a tax on the income at issue is barred by the due process clause of the U.S. Constitution; and

3. An assessment of penalties against Penney for negligence or intentional disregard of law was not justified under I.C. 6-2-1-16 (Burns Code Ed. 1978).

The Department contends that Penney's activities did fall within the ambit of I.C. 6-2-1-2 which reads in pertinent part as follows:

"There is hereby imposed a tax upon the receipt of gross income, measured by the amount or volume of gross income, and in the amount to be determined by such application of rates on such gross income as hereinafter provided. Such tax shall be levied ... upon the receipt of gross income derived from activities or businesses or any other source within the state of Indiana ...."

In support of this contention, the Department points to several of Penney's business activities, namely that Penney maintains

both retail and warehouse facilities in Indiana and Penney conducts advertising campaigns through the mass media. However, Penney supports the refund by showing that the particular transactions at issue are dissociated from the local business and are interstate in nature.

The facts in this case are not in dispute. When the error complained of on appeal is the correctness of the trial court's application of the law, the reviewing court must take the facts as found in the court below. *Farmers Mutual Insurance Co. v. Wolfe* (1968) 142 Ind.App. 206, 212, 233 N.E.2d 690, 693. This is particularly true where, as here, a transcript of evidence concerning facts in addition to those stipulated could not be prepared, and the Department failed to follow the procedures set forth in Appellate Rule 7.2(A)(3)(c). *Registration & Management Corp. v. City of Hammond* (3d Dist. 1972) 151 Ind.App. 471, 280 N.E.2d 327. The threshold question is whether the trial court, under the circumstances of this case, was correct in concluding as a matter of law that Penney's activities were interstate.

The meaning of "doing business within the state" was discussed by our court in *Indiana Department of State Revenue v. Convenient Industries of America, Inc.* (2d Dist. 1973) 157 Ind.App. 179, 299 N.E.2d 641. There the court stated:

"The activities contemplated by the statute must be more than minimal. *See Herff Jones Co. v. State Tax Commissioner* (1967) 247 Or. 404, 430 P.2d 998. If it were otherwise, the statute itself would promote cumulative tax burdens upon interstate commerce contrary to the Constitution. We deem our statute to have the constitutional restrictions embraced within it which mandates our interpretation. See IC 1971, 6–2–1–7, Ind.Ann.Stat. § 64–2606(a) (Burns 1972 Supp.). In this connection, the derivation of the income must be attributable to activity within the state as opposed to the person from whom the income is received. *Oxnard v. Murphy* (1963) 19 A.D.2d 138, 241 N.Y. S.2d 333; *Avery Corp. v. Fugate* (1954)

129 Colo. 595, 272 P.2d 652." 299 N.E.2d at 645.

We will deal with the direct mail catalog sales and the credit service charges separately.

### DIRECT MAIL SALES

Income from the sales resulting from orders placed by Indiana customers at local catalog desks (desk sales) was reported and the tax thereon paid without protest. Accordingly, the taxation of desk sales is not in dispute. Rather, the contested transaction is the direct mail sale. Such orders are mailed directly from Indiana customers to the catalog center in Wisconsin. The orders are accepted in Wisconsin and the shipment is made from the center directly to the customer. The only contacts between Indiana retail stores and the direct mail sales from Wisconsin were:

1. 20% of Penney's catalogs were available at stores during a limited period of time, and

2. on rare occasions, where a customer was dissatisfied and refused to contact Wisconsin, adjustment or repair was arranged at the Indiana retail store.

The trial court found: "Activities within the State of Indiana related to direct mail catalog sales were minimal and incidental and fell short of the degree of activity contemplated by the Indiana Gross Income Tax Act."

Many Indiana cases have tackled the problem of distinguishing income derived from activities within a state from that between states. After examining the totality of circumstances, the Supreme Court has upheld the tax where the interstate aspect was merely incidental. *See, e. g., Department of Treasury v. Allied Mills, Inc.* (1942) 220 Ind. 340, 42 N.E.2d 34, *aff'd per curiam*, 318 U.S. 740, 63 S.Ct. 666, 87 L.Ed. 1120 (sales by Indiana corporation to Indiana customers to whom deliveries were made from plants in Illinois pursuant to orders taken in Indiana); *Indiana Department of State Revenue v. Bendix Aviation Corp.* (1957) 237 Ind. 98, 143 N.E.2d 91, *dismissed for want of federal question,*

(1958) 355 U.S. 607, 78 S.Ct. 539, 2 L.Ed.2d 524 (sale and manufacture in Indiana of articles for the United States Government); *Holland Furnace Co. v. Department of Treasury* (7th Cir. 1943) 133 F.2d 212, *cert. denied*, 320 U.S. 746, 64 S.Ct. 49, 88 L.Ed. 443 (contract by out–of–state corporation to furnish and install furnace in Indiana with labor and materials furnished at specified places in Indiana.)

On the other hand, taxation has been disallowed where the transaction, viewed as a whole, is clearly interstate in character. Thus, when an Ohio corporation contracted to ship a furnace to an Indiana customer, the transaction was labeled interstate:

"The facts as found by the trial court show that the only work performed in Indiana was the putting together of the parts of the furnaces, and the installation and adjustment thereof. There is no evidence that the furnaces were made, built, fabricated, created or brought into existence in Indiana. For the reasons above stated, the transactions here involved are clearly sales of personal chattels in interstate commerce and the installation and reassembling where required, were inherently a part of, and a necessary incident to, the sale." *Gross Income Tax Division v. Surface Combustion Corp.* (1953) 232 Ind. 100, 129, 111 N.E.2d 50, 62, *cert. denied*, 346 U.S. 829 [74 S.Ct. 51, 98 L.Ed. 353].

And, in *Gross Income Tax Division v. Warner Bros. Pictures Distributing Corp.* (1954) 233 Ind. 345, 118 N.E.2d 117, *cert. denied*, 348 U.S. 857, 75 S.Ct. 82, 99 L.Ed. 675, the court held that a license agreement between a film exchange and an Indiana exhibitor was interstate commerce. There, a New York based film distribution corporation, via its Chicago branch, obtained applications for certain films from Indiana exhibitors. Films were then shipped from the Chicago office to the exhibitor in exchange for a license fee. Indiana sought to tax those gross receipts of the corporation which were derived from the Indiana licensees. In refusing to allow the tax, the court explained:

"As we understand it, the State relies for reversal on the contention that appellee's film has reached its final destination at the exhibitor's place of business; that appellee is there engaged in a local Indiana business; that at this place the film of the appellee loses its interstate character and acquires a purely local one. With this contention we cannot agree.

.    .    .    .    .

We cannot see that appellee in the instant case, by reserving to itself the right of visitation on the exhibitor for purposes of determining its rightful license fee, has thus become engaged in the local exhibition of the film which it has licensed to the exhibitor. Nor can we see that the license agreement, providing for a percentage of the exhibitor's admission price as the license fee, changes the character of the transaction." 118 N.E.2d at 118–19.

In *Department of Treasury v. International Harvester Co.* (1943) 221 Ind. 416, 47 N.E.2d 150, *aff'd on other grounds*, (1944) 322 U.S. 340, 64 S.Ct. 1019, 88 L.Ed. 1313, our Indiana Supreme Court construed the predecessor of the current I.C. 6–2–1–2. In that case, International Harvester was a foreign corporation authorized to do business in Indiana. The company protested the levy of Indiana Gross Income Taxes upon the sales to Indiana customers where orders were solicited and accepted outside Indiana. Both shipment and payment occurred out of state. Based on such circumstances, the court found, "We cannot say that income so received by the appellees was 'derived from sources within the state of Indiana.'" 47 N.E.2d at 152. This same problem was addressed by our courts in *Gross Income Tax Division v. Owens-Corning Fiberglas Corp.* (1969) 253 Ind. 102, 251 N.E.2d 818. There, various types of business transactions occurred at an Indianapolis branch office. At issue, however, were sales by Owens–Corning to National Homes in Lafayette, Indiana. These particular sales were handled directly by the Ohio home office. All inquiries as well as all billing and payment matters were handled at the Ohio

office. The only contact in Indiana were periodic courtesy calls by the Indiana branch managers. Accordingly, the court reasoned:

"[W]e are of the opinion that these sales were clearly interstate in character and thus immune from state taxation .... [W]e cannot say that appellee's sales to National Homes were so clearly a product of appellee's intrastate activities so as to allow imposition of the disputed taxes. There does not exist a sufficient nexus between the tax and appellee's business transactions within Indiana, for which the tax is an exaction, to justify levying the tax on the income from sales to National Homes." 251 N.E.2d at 827.

The problem of minimum contacts was discussed more recently in *Mueller Brass Co. v. Gross Income Tax Division* (1971) 255 Ind. 514, 265 N.E.2d 704, *dismissed for want of federal question*, 403 U.S. 901, 91 S.Ct. 2206, 29 L.Ed.2d 677. Mueller had an office and warehouse in Indianapolis. Certain sales in the northern half of Indiana were initiated by personnel outside the state. In disallowing the levy of the Indiana Gross Income Tax against such sales, the court explained:

"All sales in the northern sector of the state are exempt from the Gross Income Tax. While, as the Court below properly found, certain Indiana based contact is had or is at least held out as available to customers in the northern territory, its incidence of importance in the sale process does not constitute that quantum of contact necessary to render the sales 'Indiana sales.' Therefore, all sales in the northern territory, even though customers in this area were given appellant's Indianapolis office as a possible source of contact, should not have been subjected to the Gross Income Tax. The evidence shows that such sales were initiated by personnel residing outside the state, that the goods sold were shipped into Indiana from another state, that the orders that were not given directly to the salesmen were mailed to appellant's out–of–state offices, and that the orders were accepted and payment received at offices located outside of Indiana. Such sales clearly

fall outside the realm of the Indiana Gross Income Tax. *Norton Co. v. Department of Revenue of State of Illinois* (1951), 340 U.S. 534, 71 S.Ct. 377, 95 L.Ed. 517." 265 N.E.2d at 717.

Viewing the circumstances of the instant case, we cannot say that the trial court's conclusion that Penney's direct mail sales were interstate was an erroneous application of the law. The unconflicting evidence supports the conclusion that the minimal local intervention fell short of the degree of activity contemplated by the Indiana Gross Income Tax Act.

## CREDIT SERVICE CHARGES

During the years in question, Penney maintained charge accounts for customers who desired that service. Applications could be filled out by the customer and mailed to a store or to the catalog center. In addition, store employees called "credit associates" were available to assist in completion of such applications. The applications were then forwarded to the regional office. A copy of each application was also sent to a local credit bureau in order to obtain credit information about each applicant.

Regional offices were maintained in Chicago and Pittsburgh. These offices were supervised by Penney's Vice President of Finance, separate from the Retail and Catalog Sales Divisions. Regional offices had no employees in Indiana.

In certain cases where the applicant met very high standards of credit worthiness, local store employees could issue a courtesy card effective immediately for three weeks. Returns of merchandise and inquiries about statements could be made at the local store but any crediting to an account was effected at the regional office. All statements and payments on charge accounts were made through the regional office.

In dispute here is the taxability of service charges paid by Indiana customers on their credit accounts. The service charge operates like an interest charge. It is assessed as a percentage of the unpaid balance if the

customer does not pay the full amount of the statement in a month. Gross income tax on the amount of *sales* from such credit transactions was paid and is not in dispute.

The Department urges that the degree of local activity associated with the credit accounts was sufficient to support a tax levy. It points to the following local contacts:

1. each retail store employed "credit associates" whose functions were to facilitate the application for and use of credit accounts;

2. local stores were authorized to issue courtesy cards to certain priority applicants; and

3. charge account applications were available in local stores.

■ The trial court found that the service charge income was income earned by a non–domiciliary corporation upon intangibles outside Indiana. Based upon this finding, the court concluded that the income was outside the reach of I.C. 6–2–1–2. Certainly, the income at issue can be classified as income derived from an intangible. The interest was computed from the amount of the unpaid charge account balance. The definition of "intangible" is described in most complete terms in the Intangible Tax Act. There "intangible" is said to include a loan account as well as a written contract for payment of money. *See* I.C. 6–5.1–1–1(8), (14). Clearly, the charge accounts in this case come within this definition.

■ The dispositive issue becomes whether Penney's service charge income, which was income earned on intangibles, was derived from activities, business, or sources within the state. We note that, in cases of doubt, the gross income tax statute must be construed against the state and in favor of the taxpayer. *Indiana Department of State Revenue v. Convenient Industries of America, Inc., supra*, 299 N.E.2d at 645.

In *Convenient, supra*, at 647, our court held that a "service fee" and an "advertising fee" paid by an Indiana franchisee to the main Kentucky corporation did not constitute taxable income to that corporation under I.C. 6–2–1–2. The court explained:

"Here, the minimal activities taking place within the State of Indiana with respect to the 'service fee', i. e., supervisory inspections and occasional conveyance of daily report forms back to Kentucky, and with respect to the 'advertising fee', i. e., furnishing window banners and displays attributable to only a fractional portion of the fee, fall far short of the degree of activity contemplated by the Indiana Gross Income Tax." *Id.*

■ In the instant case, the interest paid on the charge accounts was in effect interest paid on money loaned to the customer through the allowance of credit. As in the *Convenient* case, *supra,* all accounting and record keeping was conducted outside Indiana. Statements were sent from the Regional Office directly to the customer and ordinarily payments were made by mail directly to the Regional Office. Any inquiries about a customer's statement were sent to the Regional Office. And, collection of delinquent accounts was the responsibility of the Regional Office. On the basis of these facts, the trial court was justified in concluding that the local activities with respect to the credit service income were remote and incidental.

The court's conclusion is also supported by the Department's own interpretation of the statute. As a general rule, an agency's interpretation, while not binding upon the courts, is accorded great weight. *Indiana Civil Rights Commission v. Sutherland Lumber* (3d Dist. 1979) Ind.App., 394 N.E.2d 949, 954. The relevant Departmental regulations read in part as follows:

"Instruction 3–23: The Department applies the rule that the situs of an intangible is the domicile of the owner and, therefore, the income of a non–resident received from the sale of intangibles, or from interest ... thereon ... is considered to be received at the out of state domicile of the non–resident and thus not subject to taxation under the Act....

This position, as to the nontaxability of a non–resident's income from intangibles will not apply wherein the intangibles

obtain legal situs in Indiana through being a part of the non-resident's established business in Indiana:

Instruction 4-52: . . . [T]he situs and income from intangibles in any form follows the legal domicile of the owner, or follows the business situs of the owner when the intangibles form an integral part of a business regularly conducted at such situs, regardless of the physical location of the intangible at the time any income is received."

According to the Department policy, then, the credit charge income is taxable only if the intangibles producing the income have obtained legal situs in Indiana by being an integral part of the Indiana business. Again, the facts in this case support the trial court's conclusion that Penney's local credit service activities were remote and minimal in comparison to the overall interstate character of the transaction.

Because we uphold the trial court's conclusion that Penney's activities are not taxable given the wording of our statute, we do not reach the argument that imposition of a tax would be unconstitutional. Courts will not decide constitutional questions unless such a determination is necessary. *Indiana Educational Employment Relations Board v. Benton Community School Corp.* (1977) 266 Ind. 491, 365 N.E.2d 752. In addition, the conclusion that the taxes were improperly assessed renders the issue of appropriate penalties moot. Accordingly, we will not discuss either of these issues.

Judgment affirmed.

BUCHANAN, C. J., and SHIELDS, J., concur.