UNITED ARTISTS THEATRE CIRCUIT, INC., Plaintiff-Appellant,

v.

INDIANA DEPARTMENT OF STATE REVENUE, GROSS INCOME TAX DIVISION, Defendant-Appellee.

No. 1–683A177.

Court of Appeals of Indiana, First District.

Feb. 16, 1984.

Rehearing Denied March 21, 1984.

Larry J. Stroble, Kenneth H. Inskeep, Barnes & Thornburg, Indianapolis, for plaintiff-appellant.

Linley E. Pearson, Atty. Gen., Joel Schiff, Deputy Atty. Gen., Indianapolis, for defendant-appellee.

ROBERTSON, Judge.

United Artists Theatre Circuit, Inc. (United Artists) appeals the denial of its tax refund claim. United Artists filed suit against the Indiana Department of State Revenue for a refund of gross income tax for the 1975, 1976, 1977, and 1978 tax years.

We affirm.

United Artists is a Maryland corporation engaging in the business of exhibiting motion pictures at various theatres it owns throughout Indiana.[1] It acquires the right to exhibit films by entering licensing agreements with film distributors. There are two types of licenses: fixed rental licenses and percentage licenses. In the first type, the theatre owner pays a fixed charge to the distributor for the right to exhibit the

---

1. United Artist Theatre Circuit, Inc. has no rela- tionship to United Artist Corporation.

movie. In the second arrangement, the theatre owner pays the distributor a percentage of the gross receipts from the admissions after deducting a house allowance. The percentage licenses can be further delineated to licenses containing trust clauses and those licenses not containing trust clauses.

The Gross Income Tax Act, IND.CODE § 6–2–1–1 *et seq.*, levies a tax upon the receipt of the entire gross income of corporations resident and/or domiciled in Indiana and upon the receipt of gross income derived from activities or businesses or any other source within Indiana by non-resident corporations. Gross income which is derived from interstate commerce is exempt to the extent which state taxation is prohibited by the Constitution of the United States. *Reynolds Metals Co. v. Indiana, etc.*, (1982) Ind.App., 433 N.E.2d 1.

United Artists alleges it overpaid the Department $80,154.94 in gross income taxes. It argues gross income tax should not have been assessed upon the percentage of its receipts which were paid to the distributors pursuant to the licensing agreement. United Artists bases its argument upon two theories: 1) the percentage of the receipts "belonged" to the distributors, and 2) United Artists acted as an agent for the distributors.

■ Before addressing the merits of this appeal, it is necessary to discuss statutory construction and the standard of review. United Artists contends the statutes must be construed against the Department because any doubt as to the meaning or applicability of the Gross Income Tax act will be construed against the State and in favor of the taxpayer. However, exemptions from tax statutes will be strictly construed against the party claiming the exemption. *Indiana Department of State Revenue v. Boswell Oil Co.*, (1971) 148 Ind.App. 569, 268 N.E.2d 303.

United Artists argues IND.CODE § 6–2–1–1(h) which defines gross receipts, provides that .the statutes must be construed in its favor. This section provides:

(h) Except as hereinafter otherwise expressly provided, the term "receipts," as applied to a taxpayer, shall mean the gross income in cash, notes; credits and/or other property which is received by the taxpayer or is received by a third person for his benefit.

United Artists alleges it has accepted payment for the benefit of third persons, the distributors, and thus, the statutes should be construed in its favor.

We believe that IND.CODE § 6–2–1–1(m) resolves this question. This statute defines gross income to include the "gross receipts of the taxpayer received from trades, businesses, or commerce, including admission fees or charges ..." It is obvious that the charging of admission fees is subject to the Gross Income Tax Act, and these transactions all took place in Indiana. Moreover, a strict reading of I.C. 6–2–1–1(h) defines gross receipts to include the gross income received by the taxpayer or by a third person for the taxpayer's benefit. There is no argument that a third person is accepting payment for the benefit of United Artists, but rather United Artists is claiming that it has accepted payment on behalf of third parties. United Artists is arguing that a clearly taxable transaction should not be attributed to them because another party "owns" the receipts. This argument is tantamount to claiming an exemption. Since the transaction is taxable, we believe it is the duty of United Artists to prove that its receipts are collected on behalf of a third party. Thus, United Artists is appealing a negative judgment.

■ In reviewing negative judgments, this court will only consider the evidence most favorable to the appellee, together with all reasonable inferences to be drawn therefrom. It is only where the evidence leads to but one conclusion and the trial court has reached the opposite result that the decision will be reversed as being contrary to law. *Chaney v. Tingley*, (1977) 174 Ind.App. 191, 366 N.E.2d 707.

■ United Artists correctly asserts that a taxpayer is not liable for gross income taxes on receipts received on behalf of a

third person. *See, Ind. Dept. of Revenue v. Waterfiled [sic] Mtg.,* (1980) Ind.App., 400 N.E.2d 212; *Dept. of Treasury v. Ice Service, Inc.,* (1942) 220 Ind. 64, 41 N.E.2d 201. United Artists argues the percentage of its receipts paid to the distributors belonged to the distributors immediately upon possession by United Artists pursuant to the licensing agreements. Thus, United Artists claims it never owned this portion of the receipts and should not be liable for taxes thereon. United Artists executed two types of licensing agreements: Agreements containing trust clauses and agreements without such clauses. The agreements containing trust clauses provided that the distributor's percentage of the funds received from the patrons belonged to the distributor and were being held in trust by United Artists. The agreements which did not contain trust clauses were very similar in nature except that they lacked an express trust agreement. These agreements provided the distributor would be entitled to a percentage of the gross receipts collected on a weekly basis. Some of the agreements provided that calculations were to be made on a daily basis.

The trial court found that the film agreements entitled the distributors to a direct share of the admission proceeds. Occasionally, the distributors would receive a fixed rental fee, but the vast majority of the time, the distributors were entitled to receive a percentage of the admissions. The percentage was usually based upon a figure above a fixed dollar amount, which represented a "house allowance" to compensate the theatre owner for its operating expenses, or a lesser percentage without application of a house allowance. The trial court also examined the licensing agreements and noted that the majority of the agreements characterized the payment procedures as rental agreements. The trial court concluded that the licensing agree-

ments were merely a means of securing payment and that any portions of admissions collected and paid on a percentage basis are an expense of doing business. It finally concluded the percentage of admissions paid to distributors constituted gross income of United Artists.

 We remain unpersuaded the trial court erred by not finding that the distributors "owned" the percentage of the receipts paid by United Artists. An examination of the licensing agreements reveals the payments were in exchange for a limited right to exhibit the film. The trial court properly determined that the percentage of admissions received by the distributors constituted a rental fee, thus, the determination was that these payments constituted a business expense and were not deductible. Gross income tax is imposed upon total receipts without deductions of any sort including such expenses as the cost of property sold, materials, labor, interest, or any other expense whatsoever. *Department of Treasury of Indiana v. Crowder,* (1938) 214 Ind. 252, 15 N.E.2d 89. In *Gross Income Tax Division, etc. v. Warner Bros.,* (1954) 233 Ind. 345, 118 N.E.2d 117, our supreme court stated: [2]

> We cannot see that appellee in the instant case, by reserving to itself the right of visitation on the exhibitor for purposes of determining its rightful license fee, has thus become engaged in the local exhibition of the film which it has licensed to the exhibitor. *Nor can we see that the license agreement, providing for a percentage of the exhibitor's admission price as the license fee, changes the character of the transaction.* (Emphasis added).

233 Ind. 348, 118 N.E.2d 117.

United Artists argues that the percentage licensing agreements should change the

---

**2.** United Artists points out that *Warner Bros.* held that the film distributors were engaged in interstate commerce and not subject to gross income tax. It also argues the Department should not be allowed to rely on this case because the holding has been repudiated by current regulations. While United Artists has cor-

rectly noted the limited holding of the case and current regulations, we see nothing within the newer regulations or the *Warner Bros.* opinion itself that vitiates the logic that the receipt of a percentage of the exhibitor's admission fee does not change the character of the transaction.

**758**

character of the transaction. In the present case, the percentage payment is nothing more than a rental fee. Moreover, the facts reveal that in calculating the distributors' fees, the distributors were not entitled to any money until after allowing a deduction for certain expenses, designated as the house allowance. Therefore, the parties were not treating the admission fees as gross income, since all calculations were made after deducting the house allowance. The facts also disclosed that United Artists was not segregating the percentage of the fees into separate banking accounts for the distributors, but rather, it was paying distributors from its own accounts. In light of the standard of review of negative judgments, we cannot conclude that the evidence leads to only one conclusion and the judgment is contrary to law.

The second issue United Artists raises is whether the trial court erred by failing to determine that it was a special agent for the distributors. United Artists argues it was merely a collection agent for the distributors because United Artists was subject to strict controls regarding the exhibition of films. The licensing agreements required United Artists to utilize special pre-numbered tickets and authorized the distributors to audit United Artists's records and to monitor the theatre premises. The distributors also retained certain rights regarding the length of time the film was to be exhibited and penalties levied on the exhibitors for failing to show the picture. The evidence also revealed the distributor had almost total control of the advertising.

The trial court entered findings of facts that the licensing agreements did not contain any language naming United Artists as an agent for the distributors for any purpose and that there was no statement by any distributor that United Artists was its agent for any purpose. The trial court made conclusions of law that United Artists did not act as an agent for distributor, that United Artists's allegation of agency was uncorroborated, and that the licensing agreements are merely a means of securing payment.

The question of whether an agency exists is ordinarily a question of fact. Indiana has employed the definition of agency propounded by the American Law Institute.

Agency is the relationship which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to this control, and consent by the other so to act.

*Dept. of Treasury v. Ice Service, Inc., supra,* 220 Ind. at 67–68, 41 N.E.2d 201. An agency relationship can exist only if the agent is subject to the principal's control with respect to the work details. *McDaniel v. Sage,* (1981) Ind.App., 419 N.E.2d 1322. It is a well established rule that agency cannot be proven by the declarations of the agent alone. *Storm v. Marsischke,* (1973) 159 Ind.App. 136, 304 N.E.2d 840.

United Artists argues the facts establish it was a collection agent and that the present case is similar to *Indiana Dept. of Revenue v. Waterfiled [sic] Mtg. Co., supra.* Unlike Waterfield, United Artists is not named as the distributors' agent in any of the licensing agreements. There was no evidence introduced showing the distributors claimed United Artists to be an agent. In *Waterfield,* the evidence showed that the mortgage company was merely a conduit to pay the banks on the sixty thousand mortgages it serviced. Waterfield's duties required it to collect mortgage payments and transfer those amounts including interest to the appropriate bank.

United Artists was not a conduit to collect fees on behalf of the distributors, but rather, its payments were in exchange for the right to exhibit films. Although the distributors obtained the right to audit United Artists's accounts and designated certain procedures in United Artists's operations, the trial court concluded these procedures were the distributors' means of securing payment. The evidence showed that these procedures were imposed upon United Artists because the distributors had greater bargaining power than United Art-

ists. The facts disclosed United Artists owned and operated the projection equipment, it set admission prices, it entered separate licensing agreements for each film, it entered agreement with thirty different distributors, and United Artists could show films from different distributors at its theatres which had more than one screen.

■ The trial court properly concluded that United Artists was not an agent for the distributors. United Artists attempted to prove agency by uncorroborated declarations of the agent. There was no showing of a manifestation of consent by the parties that United Artists acted on behalf of the distributors. In determining the existence of an agency, courts look to the real nature of the agreement and will ignore inconsistent language in agreement. *Id.* In the present case, there is no inconsistency in the licensing agreements's language and the real nature of the agreements reveals they were rental agreements in which United Artists promised to pay a percentage of the admissions in exchange for the limited right to exhibit the film.

■ The final issue United Artists raises is whether the trial court applied the correct standard of review. The trial court held that its scope of review was limited to facts presented to the Department and it recognized a presumption that the facts found by the Department at its administrative hearing were valid.

The trial court's holding that its scope of review was limited to the facts presented to the Department is incorrect. IND. CODE § 6-2-1-19 provides the statutory framework for gross income tax refunds. Subsection (b) provides:

(b) Either party to such suit shall have the right to appeal, as now provided by law in civil cases. In the event a final judgment is rendered in favor of the taxpayer in a suit to recover illegal taxes, then it shall be the duty of the state auditor, upon receipt of a certified copy of such final judgment, to issue a warrant directed to the treasurer in favor of such taxpayer, to pay such judgment out of any funds in the state treasury not otherwise appropriated.

United Artists argues this entitles a taxpayer to a trial *de novo* and we agree with its argument. First, the right to administrative hearing is discretionary with the Department. Furthermore, there is nothing within the language of the Gross Income Tax Act to indicate that the refund procedure is a review of an administrative determination. Moreover, we have previously reviewed the trial court's findings as findings from a trial *de novo*. *See, Indiana Department of State Revenue v. Indianapolis Transit System,* (1976) 171 Ind. App. 299, 356 N.E.2d 1204. In *Wayne Pump Co. v. Department of Treasury,* (1953) 232 Ind. 147, 110 N.E.2d 284, the supreme court held it was the trial court's duty to determine the issues in tax refund suits upon the merits. Whatever reliance the trial court and the Department gave to *State Board of Tax Commissioners v. Gatling Gun Club,* (1981) Ind.App., 420 N.E.2d 1324, is misplaced because it is a property tax case with substantially different procedures.

Whatever error the trial court might have committed by limiting the scope of review is harmless. United Artists has not shown that any evidence was excluded by the trial court. It did not make an offer to prove with any excluded evidence. Moreover, United Artists concedes in its brief that there were no facts at trial which differed from those shown to the Department.

United Artists also argues the trial court erred by recognizing a presumption that the facts found at the Department's hearing were valid. United Artists argues that no factual presumptions are recognized by either the statute or the trial rules. There is no Indiana case law which recognizes such a presumption. Since a tax refund suit is a trial *de novo*, there is no reason to employ such a presumption.

In its brief, United Artists argues the trial court erred by utilizing such a presumption because there was no indication of what facts were found by the Department. It also argues there is no dispute as

to the underlying facts. In its reply brief, United Artists claims it is entitled to a new trial because the trial court only sought to determine whether the evidence was sufficient to support the Department's findings and whether the Department's findings were arbitrary, capricious, an abuse of discretion, or unsupported by sufficient evidence. Even though United Artists may not have preserved this issue for review by not raising the question of a new trial in its brief, an examination of the trial court's findings of facts, conclusions of law, and final judgment indicates a new trial is not necessary. There is nothing in the trial court's decision to indicate that it was merely determining whether the evidence was sufficient to support the Department's findings. Furthermore, United Artists previously argued that the Department did not make any findings of fact. The findings of facts and conclusions of law were far more extensive than the Department's Letter of Disposition regarding its administrative hearings with United Artists. We remain unpersuaded that the trial court did not base its decision upon the evidence presented at trial.

The judgment is affirmed.

NEAL, P.J., and RATLIFF, J., concur.