INDIANA DEPARTMENT OF STATE REVENUE *v.* CONVENIENT INDUSTRIES OF AMERICA, INC.

[No. 2-972A56. Filed July 31, 1973. Rehearing denied September 7, 1973. Transfer denied April 10, 1974.]

*Theodore L. Sendak,* Attorney General, *Mark Peden,* Deputy Attorney General, for appellant.

*James E. Hawes, Jr., Leonard J. Betley, W. Stephen Perry, Ice Miller Donadio & Ryan,* of Indianapolis, for appellee.

SULLIVAN, J.—The State Department of Revenue has brought this appeal from a judgment that certain payments to appellee by franchisees were not subject to Indiana Gross Income Tax.

Plaintiff Convenient Industries of America, Inc., a Kentucky Corporation with headquarters in Louisville, generally engaged in the franchising of food marts, filed its complaint on August 3, 1970 following denial of an administrative claim for refund of taxes assessed by the Indiana Department of State Revenue for years 1962 to 1969, inclusive. The record discloses that payment of the disputed tax was made within three years preceding filing of the claim for refund, as required by IC 1971, 6-2-1-19, Ind. Ann. Stat. § 64-2614a (a) (Burns 1961). The court below entered findings and

conclusions and a judgment directing that the taxpayer recover disputed tax payments

A brief consideration of the nature of Convenient's business is required in order to fully understand the issues involved. In essence, Convenient sells to its franchisees in Illinois, Kentucky, Tennessee and Indiana both the franchise rights themselves and management services. Franchisees first pay an "initial fee". This fee covers training for the franchise owners and expenses incidental to site selection, planning and building of a Convenient Food Mart, which is leased by Convenient and subleased to the franchisee. The franchisee pays a "rental fee", and further pays a "franchise fee" for the use of the national name Convenient, other trademarks and for receipt of benefits incident thereto. None of these fees are at issue in this appeal.

Convenient received from Indiana franchisees an amount earmarked for a unified advertising campaign ("advertising fee"). The bulk of this amount was spent for radio and television in the Louisville, Kentucky area with a small portion being spent on window banners and displays which were furnished to franchisees.

In keeping with its philosophy that individual franchisees should be relieved of administrative duties in order that they might concentrate on merchandising and marketing their wares. Convenient in return for a "service fee", provided management and bookkeeping services to the franchisees. Convenient received cash register receipt information, statements for supplies and other documents in each franchisee's "daily report". From this material, Convenient computed and issued checks for the payroll and other obligations of the franchisee, prepared his tax returns and maintained profit and loss statements and balance sheets for each store. Convenient utilized computed analysis to offer advice to each franchisee regarding ways in which an operation might be made more efficient.

Convenient's representative to the franchisees here concerned was a "supervisor", who had responsibility for nine Indiana and nine Kentucky stores. The primary function of the supervisor was to inspect the stores in order to insure the franchisees' compliance with undertakings they had made in the franchise agreement. As a convenience to the franchisees', the supervisor would occasionally take the daily report with him after his inspection, but this function was normally performed by an independent messenger service or by mail. All accounting, recordkeeping and other benefits accorded in connection with the service fee were conducted at Convenient's computer facility in Kentucky.

The Indiana Department of State Revenue contends that the proceeds from the "service fee" and "advertising fee" are subject to the Indiana Gross Income Tax as "gross income derived from activities or businesses or any other source within the state of Indiana, of all persons who are not residents of the state of Indiana." IC 1971, 6-2-1-2, Ind. Ann. Stat. § 64-2602 (Burns 1961).

The Department at length argues in an effort to overcome constitutional issues of due process, and of the burden upon interstate commerce caused by "double taxation". The temptation to consider the Indiana Gross Income Tax here upon those terms, as has been done almost invariably in the past, is like the lure of the siren's song. However, examination of the proceedings herein reveal that the complaint was not founded nor the case decided below upon constitutional grounds.[1]

---

*"FINDINGS OF FACT*

1. Convenient Industries of America, Inc. (herein referred to as "plaintiff") is a corporation organized under the laws of the state of Kentucky and is not qualified to do business in the state of Indiana. Plaintiff has no office or place of business in the state of Indiana.

2. After an audit by the Indiana Department of State Revenue, plaintiff paid Indiana gross income tax for its fiscal years ending May 31, 1962 through May 31, 1970, inclusive. The total amount of tax in dispute, all of which has been paid by plaintiff is $11,532.85. In addition,

plaintiff has paid interest in the amount of $878.30 and penalties in the amount of $857.62 for a total amount in dispute, tax, interest and penalties, of $13,268.77.

3. Plaintiff duly filed a claim for refund of the total amount of $13,268.77 which was denied by the Indiana Department of State Revenue on May 6, 1970. This action was commenced by the filing of a complaint on August 3, 1970. The Court has jurisdiction of the subject matter and parties in this action.

4. Plaintiff has been licensed by Convenient Food Marts, Inc., an unrelated Illinois corporation, and the owner of the registered name, 'Convenient Food Marts', and various trademarks and trade names connected therewith, to grant franchises in certain geographic areas, including parts of Indiana.

5. Plaintiff has granted franchises in four (4) states covering approximately one hundred fifty-five (155) stores. By the end of the taxing period in question, plaintiff had granted franchises under seven (7) separate agreements covering nine (9) stores in the state of Indiana.

6. The plaintiff received five (5) different types of payments from Indiana franchisees, all of whom are independent, unrelated Indiana residents. The five (5) types of payments are as follows:

(a) The "initial fee". This is a one-time fee paid by a franchisee to the plaintiff to cover the cost of the national franchise, manual of operations, equipment layout, training of the owner, labor of the initial stocking of the store, plans and specifications for the store, selection of location, supervision of building and leasing expenses. The initial fee is not in issue in this case and is referred to here only for the sake of completeness.

(b) Rentals. Plaintiff also received certain rental receipts on the real estate occupied by the franchisees. The plaintiff has paid the Indiana gross income tax on these receipts and these receipts are not in issue in this case.

(c) The 'franchise fee'. Plaintiff received a fee to pay for the franchise, and for the use of the national name, trademarks and the benefits thereunder.

(d) The 'service fee'. Plaintiff received from the franchisee a fee for services performed. This fee covers the performance of a varity of services including bookkeeping, accounting and related services.

(e) The 'advertising fund'. The plaintiff received a payment which is required under the contracts with the franchisees 'to constitute a fund to be used for advertising' for the franchisees.

7. The franchise fee is income from the sale of an intangible. Plaintiff is a nonresident of the state of Indiana and such intangible does not have a situs in the state of Indiana, but rather has a situs in Louisville, Kentucky, the principal place from which the business of plaintiff was directed or managed.

8. The service performed by the taxpayer in exchange for the service fee involved a wide range of bookkeeping, accounting and other related services. Plaintiff performed in exchange for such fees, the following services, among others, in the state of Kentucky:

(a) Filed receipt documents and matched documents with statements from suppliers.

(b) Drew checks to pay payroll and other obligations.

(c) Utilizing extensive computer facilities, weekly reports of credits and debits were prepared.

Constitutional considerations are not therefore necessary to our determination.

Insofar as here pertinent, the Gross Income Tax statute requires that in order to be taxable, gross income of a non-

---

(d) Prepared profit and loss statements and balance sheets.

(e) Analyzed operational problems based in part on examination of computer print-outs.

(f) Prepared tax and other returns.

(g) Contacted suppliers in order to check on quality and price.

(h) Prepared lists of suggested suppliers and products.

Substantially all of the services performed in exchange for the service fee was performed by plaintiff in the state of Kentucky, and it was contemplated by the parties that such activities would be performed in the state of Kentucky. Only minor incidental activities of the plaintiff in connection with this fee were performed in the state of Indiana.

9. The amounts paid to plaintiff as an advertising fund were required to be expended on advertising campaigns for the benefit of the payors and in fact, all of such funds were so spent. Such amounts constituted a separate advertising fund. Advertising was placed primarily through Louisville, Kentucky media with the bulk of such funds being spent on television and radio advertising. A small amount of plaintiff's advertising material was furnished to the franchises in the form of window signs and window banners. To the extent that plaintiff performed any services in connection with this fund, substantially all of such services was performed in Louisville, Kentucky, and only an incidental part of such services was performed in the state of Indiana.

### CONCLUSIONS OF LAW

1. The law is with the plaintiff and against the defendant.

2. The Indiana gross income tax levied by the state of Indiana upon the receipts from the sale of the franchise was improper in that such receipts constituted receipts from an intangible asset having a situs in the state of Kentucky.

3. The Indiana gross income tax levied by the state of Indiana upon the receipts from the service fee was improper in that the services for which such fee was received were performed, except for minor incidental parts, in the state of Kentucky.

4. The Indiana gross income tax levied by the state of Indiana upon the advertising fund was improper in that the amounts in such fund were received by plaintiff as an agent and not as a principal and therefore were not gross income of the plaintiff. Alternatively, if such receipts be regarded as gross income of the plaintiff, they are not subject to gross income tax by the state of Indiana since the services for which such receipts were received were performed, except for minor incidental parts, in the state of Kentucky.

5. Plaintiff is entitled to recover of and from the defendant taxes, interest and penalties paid in the amount of $13,268.77, together with interest on such sum from the date of payment to the date of judgment."

resident must be derived from activities within the state. If the activities giving rise to the income sought to be taxed do not occur within Indiana, then the tax may not be levied—not because to do so is forbidden by the United States Constitution (although it well may be)—but rather because under those facts the levy is forbidden by the statute.

Our threshold determination is thus not whether Convenient's activities are interstate in nature but whether they are extrastate. The trial court entered findings of fact which stated that substantially all of the services performed pursuant to the "service fee" and the "advertising fee" were performed in Kentucky with only minor incidental matters being performed in Indiana.

The activities contemplated by the statute must be more than minimal. See *Herff Jones Co.* v. *State Tax Commissioner* (1967), 247 Ore. 404, 430 P. 2d 998. If it were otherwise, the statute itself would promote cumulative tax burdens upon interstate commerce contrary to the Constitution. We deem our statute to have the constitutional restrictions embraced within it which mandates our interpretation. See IC 1971, 6-2-1-7, Ind. Ann. Stat. § 64-2606(a) (Burns 1972 Supp.). In this connection, the derivation of the income must be attributable to activity within the state as opposed to the person from whom the income is received. *Oxnard* v. *Murphy* (1963), 19 A.D. 2d 138, 241 NYS 2d 333; *Arvey Corp.* v. *Fugate* (1954), 129 Colo. 595, 272 P. 2d 652. Compare *Indiana Department of State Revenue* v. *Frank Purcell Walnut Lumber Co.* (1972), 152 Ind. App. 122, 282 N.E.2d 336 (taxability of *resident* Indiana corporation by reason of sales to Indiana purchasers as construed in the light of the exemption from gross income provided by IC 1971, 6-2-1-1, Ind. Ann. Stat. § 64-2601 (m) (Burns 1972 Supp.) which excludes "gross receipts received from sources outside the state . . . where . . . received from a

trade or business situated and regularly carried on at a legal situs outside the state. . .").

The Department's pertinent argument may be summarized as a claim of insufficient evidence to support the trial court's determination that the activities took place in Kentucky, and assigning error to the conclusion of law insofar as they are based upon those findings of fact.

It is to be noted that if doubt exists as to the applicability of the gross income tax statute, it must be construed most strongly against the state and in favor of the taxpayer. *Gross Income Tax Division* v. *Klink* (1953), 232 Ind. 473, 112 N.E.2d 581; *Gross Income Tax Division* v. *Surface Combustion Corp.* (1953), 232 Ind. 100, 111 N.E.2d 50 (Cert. den. 346 U.S. 829).

The Department relies heavily upon two decisions. Examination of the cases reveals that they rest upon substantially different factual bases than those before us:

(1) *Holland Furnace Co.* v. *Department of Treasury* (1943 7th Cir.) 133 F. 2d 212 (cert. den. 320 U.S. 746, 64 S.Ct. 49) was a consolidated appeal of cases involving several corporations which performed contracts within Indiana. All of the corporations in *Holland* were qualified to do business in Indiana. One such corporaton established sales offices within the state and maintained a staff of employees who solicited sales within Indiana. All of the corporations solicited sales in Indiana, and in performances of their contracts erected their various constructons at Indiana cities, using their own employees or trainees as labor.

In comparison, Convenient is not qualified to do business in Indiana; it maintains no sales staff here, and the bulk of the labor in performance of their contracts with franchisees occurred in Kentucky.

(2) In *Gross Income Tax Division* v. *Fort Pitt Bridge Works* (1949), 127 Ind. 538, 86 N.E.2d 685, a more complex

fact situation appears. Fort Pitt, a Pennsylvania corporation, submitted a bid to Youngstown Sheet & Tube Co. for the razing of certain buildings owned by Youngstown within Indiana and the construction of new buildings at the site. Fort Pitt was the only party to the contract with Youngstown and all payments were made to Fort Pitt.

It subsequently appeared that Fort Pitt had sub-contracted the actual demolition project and erection of the new structures in Indiana to an Ohio corporation. For Pitt had limited its activities to the fabrication of the structure, which was done outside Indiana.

Fort Pitt maintained that the contract was severable into a contract for fabrication and a contract for demolition and erection and that therefore since Fort Pitt had performed their fabrication contract outside Indiana, it could not be subject to the Gross Income Tax.

If the Indiana Supreme Court had upheld Fort Pitt's argument that the contract was severable, then indeed Fort Pitt's position would have been analogous to that of Convenient. However, the court stated:

"It seems to us that the transaction is irrevocably characterized by the fact that the bid was made in Fort Pitt's name and Sheet & Tube directed all orders and made all payments to Fort Pitt, not only for fabricating and furnishing the steel, but also for the erection and construction work, and that Fort Pitt permitted this to be done. It was, we think, clearly a single contract, whereby Fort Pitt committed and obligated itself for the entire result." 227 Ind. 538, 544.

Thus, Fort Pitt was held taxably responsible for the erection of the building within Indiana, which clearly brought the contract within the activity requirements of the Gross Income Tax Act.

There is amply evidentiary support for the Trial Court's determination that substantially all of the services performed

in connection with the fees herein were performed in Kentucky. The Court below pointed out, relevant to the "service fee", that Convenient conducted the following activities in its Louisville office:

    (a) Filed receipt documents and matched documents with statements from suppliers.
    (b) Drew checks to pay payroll and other obligations.
    (c) Utilizing extensive computer facilities, weekly reports of credits and debits were prepared.
    (d) Prepared profit and loss statements and balance sheets.
    (e) Analyzed operational problems based in part on examination of computer print-outs.
    (f) Prepared tax and other returns.
    (g) Contracted suppliers in order to check on quality and price.
    (h) Prepared lists of suggested suppliers and products.

Convenient received the "advertising fee" in Kentucky, and proceeded to engage primarily Kentucky media in Kentucky to fulfill its obligations. The funds spent on window displays were a very small portion of the total advertising budget and the trial court was entitled to consider that expenditure to be insignificant.

The precedent set for us in *Gross Income Tax Division* v. *Surface Combustion Corporation* (1953), 232 Ind. 100, 111 N.E.2d 50 (Cert. Den. 346 U. S. 829, 74 S.Ct. 51) is persuasive. In that case, though relying upon Constitutional grounds, the Indiana Supreme Court held that incidental activities, such as assembly and installation of furnaces in Indiana by the employees of an out of state furnace manufacturer did not constitute activity within the state such as to be subject to the Indiana Gross Income Tax.

Here, the minimal activities taking place within the State of Indiana with respect to the "service fee", i.e., supervisory inspections and occasional conveyance of daily report forms back to Kentucky, and with respect to the "advertising fee",

i.e., furnishing window banners and displays attributable to only a fractional portion of the fee, fall far short of the degree of activity contemplated by the Indiana Gross Income Tax Act. See *Gross Income Tax Div.* v. *Warner Brothers* (1954), 233 Ind. 345, 118 N.E.2d 117. Increasing use of the franchise, as an innovation of the commercial world, by its structure and operation may well serve to insulate the franchisor from tax liabilities within the several states which would otherwise accrue to a person or corporation engaged in direct activity of a similar nature. If, however, the State wishes to tighten its tax girdle upon activities conducted extraterritorially for the benefit of a foreign franchisor but which have impact within the state, the legislature must in its wisdom wrestle with the economic, constitutional and policy considerations inherent in such contemplated statutory alteration. See *Johnson, Taxing Interstate Commerce,* 39 Notre Dame Lawyer 557. Such changes, however, are not within the prerogative of the judiciary.

The trial court was correct in holding that Convenient had established that the receipts from the "service fee" and the "advertising fee" were not properly the subject of the Indiana Gross Income Tax.

The judgment is affirmed.

Buchanan, P.J. and White, J., concur.

NOTE.—Reported at 299 N.E.2d 641.