ENTERPRISE LEASING COMPANY OF CHICAGO, Enterprise Leasing Company of Detroit, Enterprise Leasing Company Of Georgia, and Enterprise Leasing Company of St. Louis, individually, and as successor to Enterprise Fleets, Inc., Petitioners,

v.

INDIANA DEPARTMENT OF STATE REVENUE, Respondent.

No. 49T10–9807–TA–74.

Tax Court of Indiana.

Dec. 18, 2002.

---

Barton T. Sprunger, Mark J. Richards, Ice Miller Donadio & Ryan, Indianapolis, IN, Attorneys for Petitioners.

Steve Carter, Attorney General of Indiana, Linda I. Villegas, Deputy Attorney General, Indianapolis, IN, Attorneys for Respondent.

## ORDER ON PETITIONERS' MOTION FOR SUMMARY JUDGMENT

FISHER, J.

■ The Petitioners, Enterprise Leasing Company of Chicago, *et al.*, petition this Court to set aside the final determinations of the Indiana Department of State Revenue (Department), which assessed the Petitioners $218,878.35 in Indiana gross income tax, adjusted gross income tax, supplemental net income tax, and penalties and interest for the fiscal years ending July 31, 1984 through July 31, 1993 (years at issue). The matter is currently before the Court on the Petitioners' motion for summary judgment, in which they raise the following issues:

I. Whether Petitioners' gross income from leasing vehicles to customers who titled, registered, and located the vehicles in Indiana is derived from "sources within Indiana" within the meaning of Indiana Code § 6–2.1–2–2? [1]

II. Whether, for purposes of calculating its Indiana adjusted gross income tax and supplemental income tax liabili-

---

**1.** The Petitioners also allege that if this Court determines their gross income is derived from "sources within Indiana," it must then determine whether the income is "taxable gross income" under Indiana Code § 6–2.1–2–2(a)(2) or whether it is exempt from tax under Indiana Code § 6–2.1–3–3 and the Commerce Clause of the United States Constitution. However, as a result of the Court's decision that the Petitioners' gross income is not derived from "sources within Indiana," the Court need not reach those questions. *See Indiana Dep't of State Revenue v. J.C. Penney Co.*, 412 N.E.2d 1246, 1252 (Ind.Ct.App.1980) (stating that "[c]ourts will not decide Constitutional questions unless such a determination is necessary"). Indeed, "[i]f the activities giving rise to the income sought to be taxed do not occur within Indiana, then the tax may not be levied—not because to do so is forbidden by the United States Constitution ... but rather because under those facts the levy is forbidden by the statute." *Indiana Dep't of State Revenue v. Convenient Indus. of Am., Inc.*, 157 Ind.App. 179, 299 N.E.2d 641, 645 (1973).

ties, the numerator of Petitioners' property factor should include the leased vehicles that were located, titled, and registered in Indiana?

## FACTS AND PROCEDURAL HISTORY

The material facts as they relate to this motion for summary judgment are undisputed. The Petitioners are nonresident corporations with corporate headquarters located outside Indiana.[2] With one exception not relevant in this case, none of the Petitioners has ever had an office, warehouse, distribution center, or any type of business location in Indiana. None of the Petitioners has ever had employees in Indiana.

The Petitioners are in the business of leasing motor vehicles to the general public. They engage in two relevant types of leasing activity. First, they lease vehicles to individual members of the public for periods of more than one year ("long-term retail leases"). Second, they lease multiple vehicles to business entities for periods of more than one year ("fleet leases").

Under the terms of the fleet and long-term retail leases, the lessees exercise complete control over the use and location of the leased vehicles, including the right to designate an independent automobile dealer from which they can pick-up their vehicles.[3] The lessees can use the leased vehicles anywhere within the continental United States and Canada.

The lessees are responsible for repairing, maintaining, and insuring the leased vehicles. Petitioners make no independent warranty or guaranty with respect to the leased vehicles, and the lessees agree to pursue any claim for breach of a manufacturer's warranty directly against the manufacturer at their own expense. Furthermore, the lessees are responsible for licensing and registering the vehicles. To the extent a lessee chooses not to handle these matters, the Petitioners will, via mail, license and register the vehicles in whatever state the lessee desires. The lessee, however, is responsible for all licensing and registration costs.

All fleet and long-term retail leases are drafted, negotiated, and executed by the Petitioners in their out-of-state headquar-

---

2. Enterprise Leasing Company of Chicago is a Nevada corporation that has its corporate headquarters in Elmhurst, Illinois. Enterprise Leasing Company of Detroit is a Michigan corporation that, during the years at issue, had its corporate headquarters in Livonia, Michigan. Enterprise Leasing Company of Georgia is a Missouri corporation that has its corporate headquarters in Atlanta, Georgia. Enterprise Leasing Company of St. Louis is a Missouri corporation that has its corporate headquarters in St. Louis, Missouri. Enterprise Fleets, Inc. (Fleets) was a Missouri corporation that had its corporate headquarters in St. Louis, Missouri. Effective March 31, 1998, Fleets merged with and into Enterprise Leasing Company of St. Louis, with Enterprise Leasing Company of St. Louis being the surviving corporation and acquiring all assets and liabilities of Fleets by operation of law.

3. At the hearing, the Petitioners offered a hypothetical:

> Enterprise Fleets of St. Louis enters into a fleet lease with Anheuser–Busch. It may cover 400 vehicles. Anheuser–Busch decides 100 of them go to St. Louis, 50 to Phoenix, 30 to Los Angeles, 10 to Indianapolis, 20 to Columbus, Ohio, and so forth and so on.
>
> * * * *
>
> When they make that choice, [Enterprise Fleets of St. Louis, which is] located outside of Indiana, send[s] ship-to instructions to the new vehicle manufacturers and/or common carriers and say these should be shipped to whatever dealer location that the lessee has chosen and they are all shipped by common carrier and that is where they are picked up by the lessee.

(Summ. J. Tr. at 6–8.)

ters. Petitioners make all billings and collections for these leases from their out-of-state headquarters. All lease payments are sent to the Petitioners' out-of-state corporate headquarters. The terms of the lease payments are not contingent on where the leased vehicles are used.

During the years at issue, the Petitioners entered into, and received income from, various fleet and long-term retail leases (leases at issue). The lessees to these leases directed the Petitioners to deliver the vehicles to Indiana, where they were subsequently titled and registered. The Petitioners, believing the gross income it received from these leases was not subject to Indiana's gross income tax because it was not derived from an Indiana source, did not file Indiana corporate income tax returns for the years at issue.

In March of 1995, however, the Department issued notices of proposed assessment to the Petitioners, assessing them for gross income tax, adjusted gross income tax, supplemental net income tax, and interest and penalties for the years at issue. Specifically, the Department determined that the Petitioners gross income from the leases at issue was taxable because the income was derived from an Indiana source. The Department also determined that, for purposes of Indiana's adjusted gross income tax and supplemental income tax, the leased vehicles that were titled and registered in Indiana should have been included in the numerator of the Petitioners' property factor for apportionment purposes.

On May 30, 1995, each of the Petitioners filed a protest with the Department. After holding a joint administrative hearing, the Department denied the Petitioners' protests on February 4, 1998.

The Petitioners filed an original tax appeal with this Court on July 1, 1998. On March 25, 1999, the Petitioners filed this motion for summary judgment. This Court conducted a hearing on the Petitioners' motion for summary judgment on July 13, 1999. Additional facts will be supplied as necessary.

## ANALYSIS & OPINION

### Standard of Review

■ This Court reviews final determinations of the Department *de novo*. IND. CODE § 6–8.1–9–1(d); *Salin Bancshares v. Indiana Dep't of State Revenue*, 744 N.E.2d 588, 591 (Ind. Tax Ct.2000). Accordingly, it is bound by neither the evidence nor the issues presented at the administrative level. *Salin Bancshares*, 744 N.E.2d at 591.

■ A motion for summary judgment will be granted only when there is no genuine issue of material fact, and a party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C); *Uniden Am. Corp. v. Indiana Dep't of State Revenue*, 718 N.E.2d 821, 824 (Ind. Tax Ct.1999). "If no genuine issue of material fact exists, either the movant or the non-movant may be granted summary judgment." *Encyclopaedia Britannica, Inc., v. State Bd. of Tax Comm'rs*, 663 N.E.2d 1230, 1232 (Ind. Tax Ct.1996) (internal quotation marks omitted).

### Discussion

#### I.

The first issue in this case is whether or not Indiana can tax the Petitioners' gross income earned as a result of the leases at issue. More specifically, the parties dispute whether the Petitioners' gross income is derived from "sources within Indiana" as required by Indiana Code § 6–2.1–2–2(a).

■ Indiana Code § 6–2.1–2–2(a) imposes a gross income tax on the receipt of

"the taxable gross income *derived from activities or businesses or any other sources within Indiana* by a taxpayer who is not a resident or domiciliary of Indiana." IND.CODE § 6–2.1–2–2(a)(2) (emphasis added). To determine whether gross income is derived from an Indiana "source," the Court must (1) isolate the transaction giving rise to the income ("the critical transaction"), (2) determine whether the Petitioners have a physical presence in, or significant business activities within the taxing state ("business situs"), and (3) determine whether the Indiana activities are related to the critical transaction and are more than minimal, not remote or incidental to the total transaction ("tax situs"). *First Nat'l Leasing and Fin. Corp. v. Indiana Dep't of State Revenue,* 598 N.E.2d 640, 643–44 (Ind. Tax Ct.1992); *Indiana–Kentucky Elec. Corp. v. Indiana Dep't of State Revenue,* 598 N.E.2d 647, 663 (Ind. Tax Ct.1992).

### A. "The Critical Transaction"

The critical transaction is defined as the activity that gives rise to the gross income in dispute. *First Nat'l Leasing,* 598 N.E.2d at 643. In this case, the activity that gives rise to the Petitioners' gross income is their leasing of vehicles. *See id.* at 645 (stating that in the case of an out-of-state corporation that leased property which was located in Indiana, the critical transaction was the leasing of property).

The Department claims, however, "the critical transaction is the several leases between the Petitioners and their customers in Indiana." (Resp't Br. in Opposition to Mot. for Summ. J. at 6.) In essence, the Department claims that the revenue generated from the leases at issue in this case (i.e., the critical transactions) is income derived from intangibles. (*See* Resp't Br. in Opposition to Mot. for Summ. J. at 10.)

■ Two tests are used to determine whether income from an intangible has an Indiana source: the "business situs" test and the "commercial domicile" test. *See Bethlehem Steel Corp. v. Indiana Dep't of State Revenue,* 597 N.E.2d 1327, 1334–35 (Ind. Tax Ct.1992), *aff'd by* 639 N.E.2d 264 (Ind.1994); *see also* IND. ADMIN. CODE TIT. 45, r. 1–1–51 (repealed 1999). Unless a taxpayer is commercially domiciled in Indiana, however, the "commercial domicile" test is irrelevant because the analysis under that test is then identical to the analysis under the "business situs" test. *Bethlehem Steel,* 597 N.E.2d at 1335 (quoting IND. ADMIN. CODE tit. 45, r. 1–1–51 (repealed 1999)). Because Indiana has never been the "commercial domicile" of any of the Petitioners, the question is simply whether the Petitioners had a "business situs" in Indiana.

### B. "Business Situs"

The Petitioners assert that they do not have an Indiana "business situs" because they do not maintain a physical presence in Indiana (i.e., they do not maintain offices, warehouses, inventory, or employees in Indiana), nor do they perform significant business activities related to their leasing function (such as conducting sales, receiving rental payments, or negotiating lease contracts) in Indiana. Furthermore, the Petitioners assert that although they owned vehicles that were located, titled, and registered in Indiana, they exercised no control over their location or use within the state.

The Department insists, however, that the Petitioners do have an Indiana "business situs" because they have performed significant business activities in this state. Specifically, the Department contends that the Petitioners fall within the scope of Indiana Administrative Code title 45, rule 1–1–49, which provides that a "business

situs" may be established in Indiana by the "[o]wnership, leasing, rental or other operation of income-producing property" in the state. IND. ADMIN. CODE tit. 45, r. 1–1–49(6) (repealed 1999).

As this Court has previously held, "[t]he use of the word 'operation' in ... 45 IAC 1–1–49(6) indicates an active participation in the listed activities of 'ownership, leasing, or rental' is necessary for the establishment of a 'business situs' in Indiana." *First Nat'l Leasing*, 598 N.E.2d at 644. In other words, the Petitioners must be active, and not passive, participants in the ownership, leasing and rental of its vehicles. *See id.* The Petitioners claim they are nothing more than passive participants in the ownership, leasing, and rental of property in Indiana, as the lessees exercise complete control over the use and location of the leased vehicles and are responsible for all repairs, maintenance, insuring, and titling and registration. The Department asserts, however, that the Petitioners participate in a much more active capacity:

> The Petitioners actively place the cars and trucks in Indiana. The Petitioners instruct the manufacturer where to deliver the vehicles.... Once the cars are located in Indiana[,] the Petitioner[s] title[ ] the cars in Indiana in [their] own name[s] and renew[ ] the registration annually.... In the case at bar the Petitioners actively not only place the cars in Indiana but, because they renew the registration annually, and thus have regular and ongoing knowledge of and consent to the location of the cars [sic].

(Resp't Br. in Opposition to Mot. for Summ. J. at 8–9.) The Department is mistaken.

Indiana determines tax consequences based on the substance, not the form, of a transaction. *Bethlehem Steel*, 597 N.E.2d at 1331 (citing *Monarch Bever-age v. Indiana Dep't of State Revenue*, 589 N.E.2d 1209, 1215 (Ind. Tax Ct.1992)). In the evidence submitted to this Court, nothing indicates that the Petitioners participated in the decisions as to where the leased vehicles were located—those were decisions that rested completely with the lessees. Once the lessees made those decisions, the Petitioners merely issued "ship-to" instructions *from their out-of-state headquarters*, at the request of the lessees, to facilitate delivery. The "ship-to" instructions do not rise to the level of "active participation" in the "ownership, leasing, or rental" of property in Indiana. *See First Nat'l Leasing*, 598 N.E.2d at 644 (stating that out-of-state corporation that did not consent to the location of its leased equipment in Indiana did not have an Indiana "business situs.")

The Department likewise confuses the titling and annual registration of the leased vehicles in Indiana as active participation by the Petitioners. The evidence shows that the Petitioners' lessees handle the registering and licensing of the vehicles in Indiana. Indeed, only in those instances where a lessee chose not to handle those administrative matters did the Petitioners, *from their out-of-state corporate headquarter* s, mail title applications and/or vehicle registrations to the Indiana Bureau of Motor Vehicles for processing. Such administrative activities do not rise to the level of "active participation" in the "ownership, leasing, or rental" of property in Indiana. Thus, the Petitioners' did not have· an Indiana business situs for the years at issue.

### C. "Tax Situs"

Assuming arguendo that the Petitioners did establish an Indiana "business situs" through their ownership · of leased vehicles located in Indiana, a "business situs" in this state is insufficient, by itself, to impose tax on a nonresident's

income. Indeed, a taxpayer may have more than one "business situs." IND. ADMIN. CODE tit. 45, r. 1–1–51 (repealed 1999)(concerning intangible personal property). This is equally true for tangible property, especially mobile property such as the cars and trucks involved in this case. When a taxpayer has more than one "business situs," the Court must determine which is the "tax situs." *See Indiana–Kentucky Elec.*, 598 N.E.2d at 662. To determine whether Indiana is the Petitioners' "tax situs," this Court must examine whether the Petitioners' Indiana activities are related to the critical transaction and are more than minimal, not remote or incidental to the total transaction.[4]

The sole activity by the Petitioners in Indiana is ownership of vehicles that are located here pursuant to the lessees' direction. The critical transaction in this case is the leasing of vehicles. All the leases at issue were executed in the Petitioners' out-of-state headquarters, not in Indiana. Furthermore, the leases were not negotiated in Indiana, nor were the lease payments received in Indiana. Consequently, none of the Petitioners' activities related to the lease contracts themselves are conducted in Indiana.

The purpose of a lease is to transfer for consideration certain rights in property, generally use and possession. *Indiana Dep't of State Revenue v. Indianapolis Transit Sys., Inc.*, 171 Ind.App. 299, 356 N.E.2d 1204, 1209–10 (1976). The Petitioners do not exert control over their lessees' use or possession of the vehicles. The decision as to where the vehicles are located and used rests with the lessees alone.

Finally, the Petitioners do not derive their lease income from the use of the vehicles exclusively in Indiana. Indeed, if the lessees choose to relocate their leased vehicles from Indiana to another state (or vice versa), there is no change in the rental payments or rental terms—they remain the same wherever the lessees use their vehicles.

In the instant case, the activities related to the lease formation and execution, as well as their activities related to the purpose of the lease (i.e., the use and possession of the vehicles) are activities performed by the Petitioners' lessees. The Court, therefore, finds that the Petitioners' ownership of vehicles located in Indiana is an activity that is not more than minimal, and is remote and incidental to the lease transaction from which their gross income is derived. "Ownership alone is ... not the degree of activity contemplated by the Indiana gross income tax statute." *First Nat'l Leasing Corp.*, 598 N.E.2d at 645.

For the reasons stated above, the Court finds that the income the Petitioners have derived from leasing vehicles to its customers, which are subsequently located, titled and registered in Indiana, is not income "derived from sources within Indiana." Accordingly, the income is not subject to Indiana's gross income tax.

## II.

The second issue is whether the Petitioners must include the vehicles located,

---

4. The "business situs" test that is applied in determining whether or not income from an intangible has an Indiana source is a little more stringent in that it requires the taxpayer not only to have a "business situs" in Indiana but that the intangible or the income derived therefrom "forms *an integral part* of a business regularly conducted at a situs in Indiana[.]" *Bethlehem Steel Corp. v. Indiana Dep't of State Revenue*, 597 N.E.2d 1327, 1335 (Ind. Tax Ct.1992), *aff'd by* 639 N.E.2d 264 (Ind.1994), (quoting 45 IAC–1–1–51) (emphasis added) (repealed 1999). The term "integral" is defined as "of, relating to, or serving to form a whole: essential to completeness." *Id.*

titled, and registered in Indiana in the formula for calculating their Indiana adjusted gross income tax and supplemental net income tax[5] liabilities under Indiana Code § 6–3–2–2. While both parties claim the answer is obvious under the statute, they arrive at different outcomes.

Indiana imposes a tax on every corporation's adjusted gross income derived from sources within Indiana. IND.CODE § 6–3–2–1(b). In cases where a corporation derives business income from sources both within and without Indiana, the adjusted gross income derived from sources within the state of Indiana is determined by an apportionment formula. *See* IND.CODE § 6–3–2–2(b). Indiana's apportionment formula multiplies the business income derived from sources both within and without Indiana by a fraction, the numerator of which is a property factor plus a payroll factor plus a sales factor, and the denominator of which is three. *Id.* At issue in this case is the property factor of the apportionment formula:

> The property factor is a fraction, the numerator of which is the average value of the taxpayer's real and tangible personal property *owned or rented and used in this state* during the taxable year and the denominator of which is the average value of all the taxpayer's real and tangible personal property owned or rented and used during the taxable year. . . . Property owned by the taxpayer is valued at its original cost. Property rented by the taxpayer is valued at eight (8) times the net annual rental rate.

IND.CODE § 6–3–2–2(c) (emphasis added).

The Petitioners contend that this statute imposes two specific, separate require-

ments for property to be included in the numerator of the property factor. First, it must be owned or rented by a taxpayer. Second, the property must be used by the taxpayer in Indiana during the taxable year in question. (*See* Petrs' Br. in Support of Mot. for Summ. J. at 29.) While the Petitioners admit that they own the leased vehicles at issue in this case, they argue that because they did not physically use the vehicles in Indiana, they should not have to include them in the numerators of their property factors.

The Department responds, however, that Indiana Code § 6–3–2–2(c) imposes two *alternative* requirements for property to be included in the property factor numerator: it is "*either* 1) owned [by the taxpayer], *or* 2) rented and used." (Resp't Br. in Opposition to Mot. for Summ. J. at 18 (emphasis in original).) Accordingly, the Department maintains that because the Petitioners owned the leased vehicles, they were properly included in the Petitioners' property factor numerators.

 The Court will construe and interpret a statute only if is unclear and ambiguous. *Shoup Buses, Inc. v. Indiana Dep't of State Revenue*, 635 N.E.2d 1165, 1167 (Ind. Tax Ct.1994). When a statute is susceptible to more than one interpretation, it is ambiguous. *Amoco Prod. Co. v. Laird*, 622 N.E.2d 912, 915 (Ind.1993). Although a disagreement between the parties does not necessarily indicate ambiguity, "opposing interpretations are persuasive in suggesting than an ambiguity exists." *Shoup Buses*, 635 N.E.2d at 1168. When construing a statute, the Court's function is to give effect to the intent of the legislature in enacting the

---

5. Because the imposition of the supplemental net income tax is dependent upon determinations made in computing adjusted gross income tax, the Court need only analyze the calculation of the Petitioners' adjusted gross income tax liability. *See Indiana Dep't of State Revenue v. Endress & Hauser, Inc.*, 404 N.E.2d 1173, 1175 (Ind.Ct.App.1980).

statutory provision. *Mynsberge v. Indiana Dep't of State Revenue*, 716 N.E.2d 629, 632 (Ind. Tax Ct.1999). Generally, the best evidence of that intent is found in the language of the statute. *Id.* The Court will strive to give words and phrases in a statute their plain, ordinary and usual meaning. *Uniden Am. Corp.*, 718 N.E.2d at 824. Further, the Court must read a statute to give effect to every word. *USAir, Inc. v. Indiana Dep't of State Revenue*, 623 N.E.2d 466, 470 (Ind. Tax Ct.1993). The Court will avoid an interpretation that renders any part of the statute meaningless or superfluous. *Id.* Using these rules of statutory construction, the Court concludes that the Petitioners' interpretation of Indiana Code § 6–3–2–2(c) is the correct interpretation.

 First, under Indiana Code § 6–3–2–2(c), property can be attributed to a taxpayer as either the owner or a lessee. In fact, the statute specifically addresses how the value of the property is calculated, depending on whether the taxpayer is the owner of the property or the lessee of the property. IND.CODE § 6–3–2–2(c) (stating that while "[p]roperty owned by the taxpayer is valued at its original cost . . . . [p]roperty rented by the taxpayer is valued at eight (8) times the net annual rental rate"). If the Court reads this provision in conjunction with the "owned or rented and used" language earlier in the statute, the terms "owned" and "rented" can only mean "owned" or "rented" by the taxpayer. It follows, then, that "used" means by the taxpayer as well.

Second, when Indiana Code § 6–3–2–2(c) specifically addresses the value of property held by the taxpayer as either its owner or the lessee (again, "[p]roperty owned by the taxpayer is valued at its original cost . . . . [p]roperty rented by the taxpayer is valued at eight (8) times the net annual rental rate"), it is clear that the legislature intended that property 1) be owned or rented by the taxpayer, and 2) be used by the taxpayer in Indiana. Had the legislature intended the statute to be read as two alternative requirements (i.e., that property is *either* owned *or* rented and used), the legislature would have stated that "[p]roperty owned by the taxpayer is valued at its original cost and that [p]roperty *rented and used* is valued at eight (8) times the net annual rental rate."

For all the above stated reasons, this Court holds that the Petitioners are not required to include the vehicles located, titled and registered in Indiana in their property factor numerators.

### Conclusion

For the foregoing reasons, this Court hereby grants the Petitioners' motion for summary judgment.

SO ORDERED this 18th day of December, 2002.