**U–HAUL INTERNATIONAL, INC., Petitioner,**

**v.**

**INDIANA DEPARTMENT OF STATE REVENUE, Respondent.**

No. 49T10–0405–TA–23.

Tax Court of Indiana.

May 3, 2005.

Barton T. Sprunger, Mark J. Richards, Ice Miller Indianapolis, IN, Attorneys for Petitioner.

Steve Carter, Attorney General of Indiana, Allen Morford, Deputy Attorney General Indianapolis, IN, Attorneys for Respondent.

## ORDER ON PARTIES' CROSS-MOTIONS FOR SUMMARY JUDGMENT

FISHER, J.

U–Haul International, Inc. (UHI) appeals the Indiana Department of State Revenue's (Department) finding that it is liable for gross income tax on 100% of certain rental receipts for the tax years ending March 1, 1988, 1989, 1993, 1994, and 1995 (the years at issue). The matter is currently before the Court on the parties' cross-motions for summary judgment. The issue for the Court to decide is whether UHI's gross income was derived from Indiana sources as required by the gross income tax imposition statute.[1]

### FACTS

The following material facts as they relate to the years at issue are undisputed. The U–Haul Rental System (U–Haul System) rents moving equipment (i.e., trucks, trailers, and associated rental equipment) to the public for use throughout the United States. The U–Haul System is composed of four groups: (1) Fleet Owners; (2) Rental Companies; (3) Rental Dealers; and (4) UHI. These four groups are bound together by a series of contractual relationships, with UHI controlling the form, terms, and conditions of each contract.

The Fleet Owners are corporations, partnerships, or individuals that own and supply the moving equipment to the U–Haul System for rental purposes. Pursuant to contracts with UHI (Fleet Owner Contracts), all Fleet Owners entrust their equipment to the U–Haul System in exchange for a percentage of the gross rental income collected by the Rental Dealers from the public.

The Rental Companies are separate corporations that merchandise and supervise the maintenance and repair of the rental equipment. The Rental Companies contract with UHI (Rental Company Contracts), and UHI assigns a territory wherein the Rental Companies are responsible for establishing and servicing Rental Dealers for the U–Haul System. Pursuant to those contracts, the Rental Companies receive a percentage of the gross rental income collected by Rental Dealers located in their territories.

The Rental Dealers are business entities that display and rent the U–Haul moving equipment to the public. Typically, the Rental Dealers have been local gas stations and are unrelated to other members of the U–Haul System.[2] Pursuant to their contracts with the Rental Companies (Rental Dealer Contracts), the Rental Dealers make weekly deposits of all rental income collected from the public to a depository bank account belonging to UHI. Rental Dealers are entitled to a contractual percentage of the gross rental amounts they collect from the public upon the leasing of the moving equipment.

UHI, a Nevada corporation, is located in Phoenix, Arizona. UHI provides clearinghouse, accounting, computer, management analysis, and other services to the U–Haul System in accordance with its contracts

---

**1.** UHI also argues that taxation of its receipts is impermissible under the Commerce Clause of the United States Constitution. (See Pet'r Br. In Supp. Of [Its] Mot. For Summ. J. at 14–15.) Nevertheless, because the Court resolves this case on statutory grounds, it is unnecessary to reach this Constitutional question. See Bethlehem Steel Corp. v. Indiana

Dep't of State Revenue, 597 N.E.2d 1327, 1330 (Ind. Tax Ct.1992).

**2.** Over the years, however, some subsidiaries of UHI have acquired property to serve as retail locations to lease moving equipment. Thus, some Rental Companies also serve as Rental Dealers at company-owned locations within their territories.

with the Fleet Owners and Rental Companies. Upon receipt of the rental amounts collected by the Rental Dealers, UHI is responsible for distributing the contractual shares of the rental amounts to the Fleet Owners, Rental Companies, and Rental Dealers.

Under the contractual structure of the U–Haul System during the years at issue, UHI received service fees from other members of the System as compensation for the services it provided to them. These fees were based upon the volume of work performed by UHI. UHI received no other fees, compensation, or other gross income. It did not retain any percentage of the rental amounts that Rental Dealers collected from the public.

UHI never had an office, warehouse, retail outlet, or any other type of business location in Indiana, never owned any tangible property in Indiana, never had any employees located in Indiana, and never performed any services in Indiana. At all times, UHI conducted its business activities entirely at its headquarters in Phoenix, Arizona.

For the years at issue, UHI filed Arizona income tax returns, reporting all of its gross income as income generated in Arizona. UHI has never reported the shares of the Fleet Owners, Rental Companies, or Rental Dealers as its gross income for either federal or state income tax purposes. UHI did not file state income tax returns in any state other than Arizona.

## PROCEDURAL HISTORY

After conducting audits in 1991 and 1996, the Department assessed the Rental Companies for gross income tax on 100% of the rental amounts collected by the Indiana Rental Dealers for the years at issue. The Rental Companies protested the assessments, which were ultimately upheld by the Department. On January 6, 1998, the Rental Companies filed an original tax appeal. This Court issued its opinion on December 20, 2002, holding that the Rental Companies were not liable for gross income tax on 100% of the Indiana rental receipts because they had no right or beneficial interest in the receipts beyond their contractually specified percentage. *See U–Haul Co. of Indiana, Inc. v. Indiana Dep't of State Revenue,* 784 N.E.2d 1078, 1084 (Ind. Tax Ct.2002) (*"U–Haul I"*).

On February 17, 2003, the Department issued proposed assessments against UHI, assessing it for gross income tax on 100% of the rental receipts collected by the Indiana Rental Dealers. UHI protested the assessments and the Department held a hearing on January 6, 2003. The Department denied the protest in a letter of findings issued on January 29, 2004.

On May 26, 2004, UHI initiated an original tax appeal. UHI subsequently filed a motion for summary judgment on September 28, 2004. The Department filed a cross-motion for summary judgment on January 28, 2005. The Court conducted a hearing on the parties' motions on April 4, 2005. Additional facts will be supplied as necessary.

## Standard of Review

 This Court reviews the Department's determinations *de novo.* IND.CODE ANN. § 6–8.1–5–1(h) (West 2005). Therefore, the Court is bound by neither the evidence presented nor the issues raised at the administrative level. *Snyder v. Indiana Dep't of State Revenue,* 723 N.E.2d 487, 488 (Ind. Tax Ct.2000), *review denied.* In addition, "the gross income tax statute must be construed most strongly against the state and in favor of the taxpayer." *Bethlehem Steel Corp. v. Indiana Dep't of State Revenue,* 597 N.E.2d 1327,

1336 (Ind. Tax Ct.1992) (internal citation omitted).

A motion for summary judgment will be granted only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C). Cross-motions for summary judgment do not alter this standard. *Snyder*, 723 N.E.2d at 488.

## Discussion

■ During the years at issue, the gross income tax was imposed by Indiana Code § 6–2.1–2–2, which provided that the tax was to be levied upon the receipt of "(1) the entire taxable gross income of a taxpayer who is a resident or a domiciliary of Indiana; and (2) the taxable gross income derived from activities or businesses or any other sources within Indiana by a taxpayer who is not a resident or a domiciliary of Indiana." IND.CODE ANN. § 6–2.1–2–2 (West 1995) (repealed 2002). Thus, as a non-resident of Indiana, UHI was subject to gross income tax on income it derived from Indiana sources only. *See id.* To determine whether gross income was derived from an Indiana source, this Court must:

(1) isolate the transaction giving rise to the income ("the critical transaction");

(2) determine whether the taxpayer has a physical presence in, or significant business activities within the taxing state ("business situs"); and

(3) determine whether the Indiana activities are related to the critical transaction and are more than minimal, not remote or incidental to the total transaction ("tax situs").

---

**3.** These services included preparation of payroll, tax returns, profit and loss statements, balance sheets, computer analysis, and advice in ways to increase efficiency. *See Indiana*

*See Enterprise Leasing Co. of Chicago v. Indiana Dep't of State Revenue*, 779 N.E.2d 1284, 1290 (Ind. Tax Ct.2002), *review denied.*

### The Critical Transaction

■ "The critical transaction is defined as the activity that gives rise to the gross income in dispute." *Id.* (citation omitted). During the years at issue, UHI's gross income arose entirely from the services it provided in Arizona to members of the U–Haul System. (*See* Aff. of George R. Olds (Olds Aff.) ¶¶ 8–9; Supplemental Aff. of George R. Olds (Supplemental Olds Aff.) ¶¶ 3–4.) More specifically, UHI received income in exchange for the clearinghouse, accounting, computer, management analysis, and other services it provided. (*See* Olds Aff. ¶ 8; Supplemental Olds Aff. ¶ 3.) This income was the *only* income received by UHI and was derived from activities taking place wholly outside of Indiana. (*See* Supplemental Olds Aff. ¶ 4.)

A similar factual setting was assessed by the Indiana Court of Appeals in *Indiana Department of State Revenue v. Convenient Industries of America, Inc. See Indiana Dep't of State Revenue v. Convenient Indus. of America, Inc.*, 157 Ind. App. 179, 299 N.E.2d 641 (1973). In that case, Convenient, a Kentucky corporation headquartered in Louisville, was engaged in the franchising of food marts in several states, including Indiana. *See id.* at 642. In return for a service fee, Convenient provided a number of management and bookkeeping services to its Indiana franchisees, all from its Louisville headquarters.[3] *See id.* at 643, 646 (footnote added). In addition, however, Convenient performed some services in Indiana, including

---

*Dep't of State Revenue v. Convenient Indus. of America, Inc.*, 157 Ind.App. 179, 299 N.E.2d 641, 643, 646 (1973).

supervisory inspections of the stores and occasional transport of daily report forms back to Kentucky, as well as a small amount of advertising. *See id.* at 642–43. The court held that Convenient had performed substantially all of its activities in Kentucky and "the minimal activities taking place within the State of Indiana. . . . f[e]ll far short of the degree of activity contemplated by the Indiana Gross Income Tax Act."[4] *Id.* at 647 (footnote added). Accordingly, Convenient was not subject to gross income tax on the service fees received from its Indiana franchisees.[5] The analogous facts of the present case compel the same conclusion: UHI is likewise exempt from Indiana's gross income tax on its receipt of service income.[6]

The Department argues, however, that it is not attempting to assess UHI's service income; rather, it is attempting to assess the income UHI derived from the rental of moving equipment in Indiana. In other words, the Department claims that UHI received an interest in the income generated by the Indiana rentals and should therefore be taxed on that income. To support its claim, the Department relies on this Court's holding in *U–Haul I* for the proposition that an agency relationship exists between UHI (the principal) and the other members of the U–Haul System (the agents). More specifically, the Department argues that because the other members of the System were merely conduits for the Indiana rental income to pass through to UHI, UHI ultimately received a beneficial interest in 100% of that income. (*See* Resp't Br. in Resp. to Pet'r Mot. For Summ. J. and in Supp. Of Its Cross Mot. For Summ. J. at 8–12.) The Department, however, has misinterpreted this Court's holding in *U–Haul I.*

In *U–Haul I,* the Court held that the Rental Companies are agents of UHI. *See U–Haul I,* 784 N.E.2d at 1083. While a taxpayer is generally not subject to gross income tax on income it receives in an agency capacity, it is subject to tax on income it receives in an agency capacity if it has a right, title, or interest in the income. *See U–Haul I,* 784 N.E.2d at 1083; *see also* IND. ADMIN. CODE tit. 45, r. 1–1–54 (1992 & 1996). In *U–Haul I,* the Court held that the Rental Companies *do* have a beneficial interest in their contractually specified percentage of the rental receipts. *See U–Haul I,* 784 N.E.2d at 1084. What logically and naturally follows from that holding is that *each* member of the U–Haul System has a beneficial interest in its own contractually specified percentage of the rental receipts. *See id.*

UHI, however, is not contractually entitled to any of the rental receipts. (*See* Olds Aff. ¶¶ 7, 9; Supplemental Olds Aff. ¶ 3.) Indeed, the amounts collected by the Rental Dealers during the years at issue were, "dollar for dollar, allocated by UHI to the other members of the U–Haul System in accordance with their contractually

---

4. The facts are even more straightforward in the present case, as UHI performed *all* of its services at its headquarters in Phoenix.

5. *Accord, Enterprise Leasing Co. of Chicago v. Indiana Dep't of State Revenue,* 779 N.E.2d 1284 (Ind. Tax Ct.2002) (out-of-state taxpayer not subject to gross income tax on lease receipts where leased vehicles were located in Indiana, but all of taxpayer's activities in drafting, negotiating, executing, billing, and collecting on leases occurred at taxpayer's out-of-state corporate headquarters), *review denied.*

6. The Department's own regulations also support this conclusion, as they provide that an out-of-state taxpayer with no business situs in Indiana is not subject to gross income tax on service income if the services performed within the state are "minimal" or "incidental" in comparison to the services performed out-of-state. *See* IND. ADMIN. CODE tit. 45, r. 1–1–121 (1992 & 1996).

specified shares of such amounts." (Supplemental Olds Aff. ¶ 3.) In other words, UHI acts as a clearinghouse, collecting and then distributing rental income to its rightful owners. The Rental Dealers, Fleet Owners, and Rental Companies each have a beneficial interest in the rental receipts; UHI does not. Accordingly, the other members of the U–Haul System are subject to gross income tax on that portion of the rental income in which they have a beneficial interest.[7] *See U–Haul I*, 784 N.E.2d at 1084 (footnote added). As UHI has no beneficial interest in any portion of the rental income, it may not be taxed on that income.

In sum, UHI's income is not derived from Indiana sources for purposes of the gross income tax. *See, e.g., Enterprise Leasing Co.*, 779 N.E.2d at 1289–90 (setting forth the three-part test for determining whether gross income is derived from Indiana sources). Indeed, UHI's income arises from the services it provides in Arizona, not from the rental of moving equipment in Indiana by the Rental Dealers. Therefore, the critical transaction is the provision of services. *See id.* Moreover, UHI has no physical presence or significant business activities in Indiana giving rise to a business situs within the state. *See id.* Finally, there are no minimal or incidental activities related to the critical transaction which take place in Indiana and give rise to a tax situs within the state. *See id.* Consequently, UHI's income is not derived from Indiana sources and it is not subject to Indiana's gross income tax.

## CONCLUSION

For the above stated reasons, the Court GRANTS UHI's motion for summary judgment and DENIES the Department's motion for summary judgment.

SO ORDERED this 3rd day of May, 2005.

---

7. Although this was not expressly stated by the Court in *U–Haul I*, it is the natural implication of the Court's holding in that case. It should be noted that in *U–Haul I*, the Court addressed the question of whether the Rental Companies could be taxed on *100%* of the Indiana rental income. As to that question, the Court answered no. The Court did *not* hold, as the Department seems to imply, that the Rental Companies were exempt from taxation on that portion of the rental income in which they had a beneficial interest. *See U–Haul Co. of Indiana, Inc. v. Indiana Dep't of State Revenue*, 784 N.E.2d 1078, 1084 (Ind. Tax Ct.2002).